# EXHIBIT A

| | |
|---|---|
| Debtor 1 | Bruce  Blankenhorn |
| | aka Bruce A. Blankenhorn aka Bruce Allan Blankenhorn dba Wealth Business Alliance |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Northern District of California (State) |
| Case number | 24-10004 |

## Official Form 410

# Proof of Claim

**04/22**

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. | **Who is the current creditor?** | Gulf Harbour Investments Corporation |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor    c/o Specialized Loan Servicing LLC |
| 2. | **Has this claim been acquired from someone else?** | ☑ No ☐ Yes. From whom? |
| 3. | **Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |

**Where should notices to the creditor be sent?**

Specialized Loan Servicing LLC
Name

6200 S. Quebec Street, Suite 300
Number      Street

Greenwood Village, Colorado 80111
City                State              ZIP Code

Contact phone    (800) 315-4757

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**Where should payments to the creditor be sent?** (if different)

Specialized Loan Servicing LLC
Name

6200 S. Quebec Street, Suite 300
Number      Street

Greenwood Village, Colorado 80111
City                State              ZIP Code

Contact phone

Contact email

| | | |
|---|---|---|
| 4. | **Does this claim amend one already filed?** | ☑ No ☐ Yes. Claim number on court claims registry (if known) _____  Filed on _____ MM / DD/ YYYY |
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No ☐ Yes. Who made the earlier filing? _____ |

| 6. | **Do you have any number you use to identify the debtor?** | ☐ No |
|---|---|---|
| | | ☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: <u>5258</u> |

| 7. | **How much is the claim?** | <u>$453,107.61</u>. | **Does this amount include interest or other charges?** |
|---|---|---|---|
| | | | ☐ No |
| | | | ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| 8. | **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information. |
|---|---|---|
| | | <div align="center">Money Loaned</div> |

| 9. | **Is all or part of the claim secured?** | ☐ No |
|---|---|---|
| | | ☑ Yes. The claim is secured by a lien on property. |

    **Nature of Property:**

☑ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle.

☐ Other. Describe:  <u>455 Cross St, Napa, California 94559</u>

**Basis for Perfection:**  <u>Recordation of Lien</u>
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**  $_____

**Amount of the claim that is secured:**  $453,107.61

**Amount of the claim that is unsecured:**  $_____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $242,548.57

**Annual Interest Rate** (when case was filed)  <u>13.000000%</u>
☐ Fixed
☑ Variable

| 10. | **Is this claim based on a lease?** | ☑ No |
|---|---|---|
| | | ☐ Yes. **Amount necessary to cure any default as of the date of the petition.**  $_____ |

| 11. | **Is this claim subject to a right of setoff?** | ☑ No |
|---|---|---|
| | | ☐ Yes. Identify the property: _____ |

Case 24-10004 Claim 73-1 Filed 08/08/24 Desc Main Document Page 2 of 45

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
|---|---|---|---|---|
| | | ☐ Yes. Check one: | | **Amount entitled to priority** |
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ _____ |
| | | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C.§ 507(a)(7). | | $ _____ |
| | | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ _____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ _____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ _____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | | $ _____ |
| | | * Amounts are subject to adjustment on 04/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date      01/31/2024
                       MM / DD / YYYY

/s/ Natalie E. Lea
       Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Natalie E. Lea | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Authorized Agent for Specialized Loan Servicing, LLC | | |
| Company | Bonial & Associates, P.C. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | P.O. Box 9013 | | |
| | Number    Street | | |
| | Addison | Texas | 75001 |
| | City | State | ZIP Code |
| Contact phone | (972) 643-6600 | Email | POCInquiries@BonialPC.com |

# Mortgage Proof of Claim Attachment

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.**

| Part 1: Mortgage and Case Information | Part 2: Total Debt Calculation | Part 3: Arrearage as of Date of the Petition | Part 4: Monthly Mortgage Payment |
|---|---|---|---|
| Case number: 24-10004 | Principal balance: $146,163.88 | Principal due: **$195,044.53** | Principal & interest: $1,910.01 |
| Debtor 1: Bruce Blankenhorn | Interest due: $299,075.33 | Interest due: **$39,635.64** | Monthly escrow: |
| aka Bruce A. Blankenhorn aka Bruce Allan Blankenhorn dba Wealth Business Alliance | Fees, costs due: $9,372.19 | Prepetition fees due: $9,372.19 | Private mortgage insurance: |
| Debtor 2: | Escrow deficiency for funds advanced: $0.00 | Escrow deficiency for funds advanced: $0.00 | Total monthly payment: $1,910.01 |
| Last 4 digits to identify: 5258 | Less total funds on hand: - $1,503.79 | Projected escrow shortage: $0.00 | |
| Creditor: Gulf Harbour Investments Corporation | Total debt: $453,107.61 | Less funds on hand: - $1,503.79 | |
| Servicer: Specialized Loan Servicing, LLC | | Total prepetition arrearage: $242,548.57 | |
| Fixed accrual/daily simple interest/other: Variable | | | |

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Starting Balance | | $0.00 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 05/20/2008 | $970.62 | | | Regular Payment Due | 05/20/2008 | $970.62 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 06/20/2008 | $969.45 | | | Regular Payment Due | 05/20/2008 | $1,940.07 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 07/20/2008 | $969.45 | | | Regular Payment Due | 05/20/2008 | $2,909.52 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 08/20/2008 | $969.45 | | | Regular Payment Due | 05/20/2008 | $3,878.97 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 09/20/2008 | $969.45 | | | Regular Payment Due | 05/20/2008 | $4,848.42 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/20/2008 | $969.45 | | | Regular Payment Due | 05/20/2008 | $5,817.87 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/20/2008 | $969.45 | | | Regular Payment Due | 05/20/2008 | $6,787.32 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/20/2008 | $969.45 | | | Regular Payment Due | 05/20/2008 | $7,756.77 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 01/20/2009 | $969.45 | | | Regular Payment Due | 05/20/2008 | $8,726.22 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |

Case number: 24-10004

Debtor 1: Bruce Blankenhorn

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | Account Activity | | | F. Contractual due date | G. Prin, int & esc past due balance | How Funds Were Applied / Amount Incurred | | | | | Balance After Amount Received or incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | C. Funds received | D. Amount incurred | E. Description | | | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 02/20/2009 | $969.45 | | | Regular Payment Due | 05/20/2008 | $9,695.67 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 03/20/2009 | $969.45 | | | Regular Payment Due | 05/20/2008 | $10,665.12 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 04/20/2009 | $969.45 | | | Regular Payment Due | 05/20/2008 | $11,634.57 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 05/20/2009 | $969.45 | | | Regular Payment Due | 05/20/2008 | $12,604.02 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 06/20/2009 | $969.45 | | | Regular Payment Due | 05/20/2008 | $13,573.47 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 07/20/2009 | $969.45 | | | Regular Payment Due | 05/20/2008 | $14,542.92 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 08/20/2009 | $969.45 | | | Regular Payment Due | 05/20/2008 | $15,512.37 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 09/20/2009 | $969.45 | | | Regular Payment Due | 05/20/2008 | $16,481.82 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/20/2009 | $969.45 | | | Regular Payment Due | 05/20/2008 | $17,451.27 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/20/2009 | $969.45 | | | Regular Payment Due | 05/20/2008 | $18,420.72 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/20/2009 | $969.45 | | | Regular Payment Due | 05/20/2008 | $19,390.17 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 01/20/2010 | $969.45 | | | Regular Payment Due | 05/20/2008 | $20,359.62 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 02/20/2010 | $969.45 | | | Regular Payment Due | 05/20/2008 | $21,329.07 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 03/20/2010 | $969.45 | | | Regular Payment Due | 05/20/2008 | $22,298.52 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 04/20/2010 | $969.45 | | | Regular Payment Due | 05/20/2008 | $23,267.97 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 05/20/2010 | $969.45 | | | Regular Payment Due | 05/20/2008 | $24,237.42 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 06/20/2010 | $969.45 | | | Regular Payment Due | 05/20/2008 | $25,206.87 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 07/20/2010 | $969.45 | | | Regular Payment Due | 05/20/2008 | $26,176.32 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 08/20/2010 | $969.45 | | | Regular Payment Due | 05/20/2008 | $27,145.77 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 09/20/2010 | $969.45 | | | Regular Payment Due | 05/20/2008 | $28,115.22 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/20/2010 | $969.45 | | | Regular Payment Due | 05/20/2008 | $29,084.67 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/20/2010 | $969.45 | | | Regular Payment Due | 05/20/2008 | $30,054.12 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/20/2010 | $969.45 | | | Regular Payment Due | 05/20/2008 | $31,023.57 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 01/20/2011 | $969.45 | | | Regular Payment Due | 05/20/2008 | $31,993.02 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 02/20/2011 | $969.45 | | | Regular Payment Due | 05/20/2008 | $32,962.47 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 03/20/2011 | $969.45 | | | Regular Payment Due | 05/20/2008 | $33,931.92 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 04/20/2011 | $969.45 | | | Regular Payment Due | 05/20/2008 | $34,901.37 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 05/20/2011 | $969.45 | | | Regular Payment Due | 05/20/2008 | $35,870.82 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |

Case 24-10004 Claim 73-1 Filed 05/01/24 Entered 05/01/24 15:22:27 Page 6 of 45

4151-N-9759

Case number: 24-10004

Debtor 1: Bruce Blankenhorn

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | Account Activity | | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | How Funds Were Applied / Amount Incurred | | | | | Balance After Amount Received or incurred | | | | |
| | | C. Funds received | D. Amount incurred | | | | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/20/2011 | $969.45 | | | Regular Payment Due | 05/20/2008 | $36,840.27 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 07/20/2011 | $969.45 | | | Regular Payment Due | 05/20/2008 | $37,809.72 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 08/20/2011 | $969.45 | | | Regular Payment Due | 05/20/2008 | $38,779.17 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 09/20/2011 | $969.45 | | | Regular Payment Due | 05/20/2008 | $39,748.62 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/20/2011 | $969.45 | | | Regular Payment Due | 05/20/2008 | $40,718.07 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/20/2011 | $969.45 | | | Regular Payment Due | 05/20/2008 | $41,687.52 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/20/2011 | $969.45 | | | Regular Payment Due | 05/20/2008 | $42,656.97 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 01/20/2012 | $969.45 | | | Regular Payment Due | 05/20/2008 | $43,626.42 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 02/20/2012 | $969.45 | | | Regular Payment Due | 05/20/2008 | $44,595.87 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 03/20/2012 | $969.45 | | | Regular Payment Due | 05/20/2008 | $45,565.32 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 04/20/2012 | $969.45 | | | Regular Payment Due | 05/20/2008 | $46,534.77 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 05/20/2012 | $969.45 | | | Regular Payment Due | 05/20/2008 | $47,504.22 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 06/20/2012 | $969.45 | | | Regular Payment Due | 05/20/2008 | $48,473.67 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 07/20/2012 | $969.45 | | | Regular Payment Due | 05/20/2008 | $49,443.12 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 08/20/2012 | $969.45 | | | Regular Payment Due | 05/20/2008 | $50,412.57 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 09/20/2012 | $969.45 | | | Regular Payment Due | 05/20/2008 | $51,382.02 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/20/2012 | $969.45 | | | Regular Payment Due | 05/20/2008 | $52,351.47 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/20/2012 | $969.45 | | | Regular Payment Due | 05/20/2008 | $53,320.92 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/20/2012 | $969.45 | | | Regular Payment Due | 05/20/2008 | $54,290.37 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 01/20/2013 | $969.45 | | | Regular Payment Due | 05/20/2008 | $55,259.82 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 02/20/2013 | $969.45 | | | Regular Payment Due | 05/20/2008 | $56,229.27 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 03/20/2013 | $969.45 | | | Regular Payment Due | 05/20/2008 | $57,198.72 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 04/20/2013 | $969.45 | | | Regular Payment Due | 05/20/2008 | $58,168.17 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 05/20/2013 | $931.04 | | | Regular Payment Due | 05/20/2008 | $59,099.21 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 06/20/2013 | $962.08 | | | Regular Payment Due | 05/20/2008 | $60,061.29 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 07/20/2013 | $931.04 | | | Regular Payment Due | 05/20/2008 | $60,992.33 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 08/20/2013 | $962.08 | | | Regular Payment Due | 05/20/2008 | $61,954.41 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 09/20/2013 | $962.08 | | | Regular Payment Due | 05/20/2008 | $62,916.49 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |

Case 24-10004 Doc#73-1 Filed 05/01/24 Entered 05/01/24 15:52:27 Page 7 of 45

4151-N-9759

Case number: 24-10004

Debtor 1: Bruce Blankenhorn

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | Account Activity | | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | How Funds Were Applied / Amount Incurred | | | | | Balance After Amount Received or incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | C. Funds received | D. Amount incurred | | | | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 10/20/2013 | $931.04 | | | Regular Payment Due | 05/20/2008 | $63,847.53 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/20/2013 | $962.08 | | | Regular Payment Due | 05/20/2008 | $64,809.61 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/20/2013 | $931.04 | | | Regular Payment Due | 05/20/2008 | $65,740.65 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 01/20/2014 | $962.08 | | | Regular Payment Due | 05/20/2008 | $66,702.73 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 02/20/2014 | $962.07 | | | Regular Payment Due | 05/20/2008 | $67,664.80 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 03/20/2014 | $868.97 | | | Regular Payment Due | 05/20/2008 | $68,533.77 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 04/20/2014 | $962.08 | | | Regular Payment Due | 05/20/2008 | $69,495.85 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 05/20/2014 | $931.04 | | | Regular Payment Due | 05/20/2008 | $70,426.89 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 06/20/2014 | $962.08 | | | Regular Payment Due | 05/20/2008 | $71,388.97 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 07/20/2014 | $931.04 | | | Regular Payment Due | 05/20/2008 | $72,320.01 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 08/20/2014 | $962.08 | | | Regular Payment Due | 05/20/2008 | $73,282.09 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 09/20/2014 | $962.08 | | | Regular Payment Due | 05/20/2008 | $74,244.17 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/20/2014 | $931.04 | | | Regular Payment Due | 05/20/2008 | $75,175.21 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/20/2014 | $962.08 | | | Regular Payment Due | 05/20/2008 | $76,137.29 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/20/2014 | $931.04 | | | Regular Payment Due | 05/20/2008 | $77,068.33 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 01/20/2015 | $962.08 | | | Regular Payment Due | 05/20/2008 | $78,030.41 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 02/20/2015 | $962.07 | | | Regular Payment Due | 05/20/2008 | $78,992.48 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 03/20/2015 | $868.97 | | | Regular Payment Due | 05/20/2008 | $79,861.45 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 04/20/2015 | $962.08 | | | Regular Payment Due | 05/20/2008 | $80,823.53 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 05/20/2015 | $931.04 | | | Regular Payment Due | 05/20/2008 | $81,754.57 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 06/20/2015 | $962.08 | | | Regular Payment Due | 05/20/2008 | $82,716.65 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 07/20/2015 | $931.04 | | | Regular Payment Due | 05/20/2008 | $83,647.69 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 08/20/2015 | $962.08 | | | Regular Payment Due | 05/20/2008 | $84,609.77 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 09/20/2015 | $962.08 | | | Regular Payment Due | 05/20/2008 | $85,571.85 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/20/2015 | $931.04 | | | Regular Payment Due | 05/20/2008 | $86,502.89 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/20/2015 | $962.08 | | | Regular Payment Due | 05/20/2008 | $87,464.97 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/20/2015 | $931.04 | | | Regular Payment Due | 05/20/2008 | $88,396.01 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 01/20/2016 | $962.08 | | | Regular Payment Due | 05/20/2008 | $89,358.09 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |

4151-N-9759

Case number: 24-10004

Debtor 1: Bruce Blankenhorn

| Part 5: Loan Payment History from First Date of Default | | | | | | | | | | | | | | | | |

| A. Date | B. Contractual payment amount | Account Activity C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | How Funds Were Applied / Amount Incurred H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | Balance After Amount Received or incurred M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/20/2016 | $993.11 | | | Regular Payment Due | 05/20/2008 | $90,351.20 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 03/20/2016 | $1,396.69 | | | Regular Payment Due | 05/20/2008 | $91,747.89 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 04/20/2016 | $1,396.25 | | | Regular Payment Due | 05/20/2008 | $93,144.14 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 05/20/2016 | $1,396.46 | | | Regular Payment Due | 05/20/2008 | $94,540.60 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 06/20/2016 | $1,396.39 | | | Regular Payment Due | 05/20/2008 | $95,936.99 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 07/20/2016 | $1,396.66 | | | Regular Payment Due | 05/20/2008 | $97,333.65 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 08/20/2016 | $1,396.64 | | | Regular Payment Due | 05/20/2008 | $98,730.29 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 09/20/2016 | $1,396.96 | | | Regular Payment Due | 05/20/2008 | $100,127.25 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/20/2016 | $1,397.31 | | | Regular Payment Due | 05/20/2008 | $101,524.56 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/20/2016 | $1,397.38 | | | Regular Payment Due | 05/20/2008 | $102,921.94 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/20/2016 | $1,397.78 | | | Regular Payment Due | 05/20/2008 | $104,319.72 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 01/20/2017 | $1,397.90 | | | Regular Payment Due | 05/20/2008 | $105,717.62 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 02/20/2017 | $1,418.55 | | | Regular Payment Due | 05/20/2008 | $107,136.17 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 03/20/2017 | $1,419.07 | | | Regular Payment Due | 05/20/2008 | $108,555.24 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 04/20/2017 | $1,418.61 | | | Regular Payment Due | 05/20/2008 | $109,973.85 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 05/20/2017 | $1,439.26 | | | Regular Payment Due | 05/20/2008 | $111,413.11 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 06/20/2017 | $1,439.55 | | | Regular Payment Due | 05/20/2008 | $112,852.66 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 07/20/2017 | $1,440.22 | | | Regular Payment Due | 05/20/2008 | $114,292.88 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 08/20/2017 | $1,460.51 | | | Regular Payment Due | 05/20/2008 | $115,753.39 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 09/20/2017 | $1,461.28 | | | Regular Payment Due | 05/20/2008 | $117,214.67 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/20/2017 | $1,462.07 | | | Regular Payment Due | 05/20/2008 | $118,676.74 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/20/2017 | $1,462.53 | | | Regular Payment Due | 05/20/2008 | $120,139.27 | | | | | | $146,163.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/22/2017 | | | $1,877.00 | Escrow Disbursement: Insurance | 05/20/2008 | $120,139.27 | | | | | | $146,163.88 | $0.00 | ($1,877.00) | $0.00 | $0.00 |
| 12/01/2017 | $1,877.00 | | | Corporate Advance: Insurance | 05/20/2008 | $120,139.27 | | | $1,877.00 | ($1,877.00) | | $146,163.88 | $0.00 | $0.00 | $1,877.00 | $0.00 |
| 12/20/2017 | $1,463.39 | | | Regular Payment Due | 05/20/2008 | $121,602.66 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,877.00 | $0.00 |
| 01/20/2018 | $1,463.91 | | | Regular Payment Due | 05/20/2008 | $123,066.57 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,877.00 | $0.00 |
| 02/20/2018 | $1,484.42 | | | Regular Payment Due | 05/20/2008 | $124,550.99 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,877.00 | $0.00 |
| 03/20/2018 | $1,485.42 | | | Regular Payment Due | 05/20/2008 | $126,036.41 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,877.00 | $0.00 |

4151-N-9759

Case number: 24-10004

Debtor 1: Bruce Blankenhorn

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Account Activity | | | | | How Funds Were Applied / Amount Incurred | | | | | Balance After Amount Received or incurred | | | | |
| 04/20/2018 | $1,485.28 | | | Regular Payment Due | 05/20/2008 | $127,521.69 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,877.00 | $0.00 |
| 05/20/2018 | $1,505.80 | | | Regular Payment Due | 05/20/2008 | $129,027.49 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,877.00 | $0.00 |
| 06/20/2018 | $1,506.54 | | | Regular Payment Due | 05/20/2008 | $130,534.03 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,877.00 | $0.00 |
| 07/20/2018 | $1,507.74 | | | Regular Payment Due | 05/20/2008 | $132,041.77 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,877.00 | $0.00 |
| 08/20/2018 | $1,527.87 | | | Regular Payment Due | 05/20/2008 | $133,569.64 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,877.00 | $0.00 |
| 09/04/2018 | | | ($118.00) | Corporate Advance Adjustment | 05/20/2008 | $133,569.64 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,759.00 | $0.00 |
| 09/20/2018 | $1,529.19 | | | Regular Payment Due | 05/20/2008 | $135,098.83 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,759.00 | $0.00 |
| 10/20/2018 | $1,530.55 | | | Regular Payment Due | 05/20/2008 | $136,629.38 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,759.00 | $0.00 |
| 11/20/2018 | $1,531.51 | | | Regular Payment Due | 05/20/2008 | $138,160.89 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,759.00 | $0.00 |
| 12/20/2018 | $1,552.05 | | | Regular Payment Due | 05/20/2008 | $139,712.94 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,759.00 | $0.00 |
| 01/20/2019 | $1,553.13 | | | Regular Payment Due | 05/20/2008 | $141,266.07 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,759.00 | $0.00 |
| 02/20/2019 | $1,573.76 | | | Regular Payment Due | 05/20/2008 | $142,839.83 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,759.00 | $0.00 |
| 03/20/2019 | $1,575.43 | | | Regular Payment Due | 05/20/2008 | $144,415.26 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,759.00 | $0.00 |
| 04/20/2019 | $1,575.71 | | | Regular Payment Due | 05/20/2008 | $145,990.97 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,759.00 | $0.00 |
| 05/09/2019 | | | $15.00 | Inspection Fee | 05/20/2008 | $145,990.97 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,774.00 | $0.00 |
| 05/20/2019 | $1,577.47 | | | Regular Payment Due | 05/20/2008 | $147,568.44 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,774.00 | $0.00 |
| 05/30/2019 | | | $15.00 | Inspection Fee | 05/20/2008 | $147,568.44 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,789.00 | $0.00 |
| 05/31/2019 | | | $90,920.00 | Corporate Advance | 05/20/2008 | $147,568.44 | | | | | | $146,163.88 | $0.00 | $0.00 | $92,709.00 | $0.00 |
| 05/31/2019 | | | $5.00 | Corporate Advance | 05/20/2008 | $147,568.44 | | | | | | $146,163.88 | $0.00 | $0.00 | $92,714.00 | $0.00 |
| 05/31/2019 | | | $99,999.00 | Corporate Advance | 05/20/2008 | $147,568.44 | | | | | | $146,163.88 | $0.00 | $0.00 | $192,713.00 | $0.00 |
| 05/31/2019 | | | $99,999.00 | Corporate Advance | 05/20/2008 | $147,568.44 | | | | | | $146,163.88 | $0.00 | $0.00 | $292,712.00 | $0.00 |
| 05/31/2019 | | | $99,999.00 | Corporate Advance | 05/20/2008 | $147,568.44 | | | | | | $146,163.88 | $0.00 | $0.00 | $392,711.00 | $0.00 |
| 05/31/2019 | | | $99,999.00 | Corporate Advance | 05/20/2008 | $147,568.44 | | | | | | $146,163.88 | $0.00 | $0.00 | $492,710.00 | $0.00 |
| 05/31/2019 | | | $99,999.00 | Corporate Advance | 05/20/2008 | $147,568.44 | | | | | | $146,163.88 | $0.00 | $0.00 | $592,709.00 | $0.00 |
| 06/10/2019 | | | ($90,920.00) | Corporate Advance Adjustment | 05/20/2008 | $147,568.44 | | | | | | $146,163.88 | $0.00 | $0.00 | $501,789.00 | $0.00 |
| 06/10/2019 | | | ($5.00) | Corporate Advance Adjustment | 05/20/2008 | $147,568.44 | | | | | | $146,163.88 | $0.00 | $0.00 | $501,784.00 | $0.00 |
| 06/10/2019 | | | ($99,999.00) | Corporate Advance Adjustment | 05/20/2008 | $147,568.44 | | | | | | $146,163.88 | $0.00 | $0.00 | $401,785.00 | $0.00 |
| 06/10/2019 | | | ($99,999.00) | Corporate Advance Adjustment | 05/20/2008 | $147,568.44 | | | | | | $146,163.88 | $0.00 | $0.00 | $301,786.00 | $0.00 |

Case 24-10004 Doc 73-1 Filed 05/01/24 Desc Main Document Page 10 of 45

Case number: 24-10004

Debtor 1: Bruce Blankenhorn

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/10/2019 | | | ($99,999.00) | Corporate Advance Adjustment | 05/20/2008 | $147,568.44 | | | | | | $146,163.88 | $0.00 | $0.00 | $201,787.00 | $0.00 |
| 06/10/2019 | | | ($99,999.00) | Corporate Advance Adjustment | 05/20/2008 | $147,568.44 | | | | | | $146,163.88 | $0.00 | $0.00 | $101,788.00 | $0.00 |
| 06/10/2019 | | | ($99,999.00) | Corporate Advance Adjustment | 05/20/2008 | $147,568.44 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,789.00 | $0.00 |
| 06/20/2019 | $1,578.79 | | | Regular Payment Due | 05/20/2008 | $149,147.23 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,789.00 | $0.00 |
| 06/26/2019 | | | ($15.00) | Inspection Fee | 05/20/2008 | $149,147.23 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,774.00 | $0.00 |
| 06/28/2019 | | | $71,003.00 | Corporate Advance | 05/20/2008 | $149,147.23 | | | | | | $146,163.88 | $0.00 | $0.00 | $72,777.00 | $0.00 |
| 06/28/2019 | | | $99,999.00 | Corporate Advance | 05/20/2008 | $149,147.23 | | | | | | $146,163.88 | $0.00 | $0.00 | $172,776.00 | $0.00 |
| 06/28/2019 | | | $99,999.00 | Corporate Advance | 05/20/2008 | $149,147.23 | | | | | | $146,163.88 | $0.00 | $0.00 | $272,775.00 | $0.00 |
| 06/28/2019 | | | $99,999.00 | Corporate Advance | 05/20/2008 | $149,147.23 | | | | | | $146,163.88 | $0.00 | $0.00 | $372,774.00 | $0.00 |
| 07/03/2019 | | | ($71,003.00) | Corporate Advance Adjustment | 05/20/2008 | $149,147.23 | | | | | | $146,163.88 | $0.00 | $0.00 | $301,771.00 | $0.00 |
| 07/03/2019 | | | ($99,999.00) | Corporate Advance Adjustment | 05/20/2008 | $149,147.23 | | | | | | $146,163.88 | $0.00 | $0.00 | $201,772.00 | $0.00 |
| 07/03/2019 | | | ($99,999.00) | Corporate Advance Adjustment | 05/20/2008 | $149,147.23 | | | | | | $146,163.88 | $0.00 | $0.00 | $101,773.00 | $0.00 |
| 07/03/2019 | | | ($99,999.00) | Corporate Advance Adjustment | 05/20/2008 | $149,147.23 | | | | | | $146,163.88 | $0.00 | $0.00 | $1,774.00 | $0.00 |
| 07/05/2019 | | | $750.00 | Foreclosure Attorney Fee | 05/20/2008 | $149,147.23 | | | | | | $146,163.88 | $0.00 | $0.00 | $2,524.00 | $0.00 |
| 07/05/2019 | | | $350.00 | Foreclosure Attorney Fee | 05/20/2008 | $149,147.23 | | | | | | $146,163.88 | $0.00 | $0.00 | $2,874.00 | $0.00 |
| 07/20/2019 | $1,580.64 | | | Regular Payment Due | 05/20/2008 | $150,727.87 | | | | | | $146,163.88 | $0.00 | $0.00 | $2,874.00 | $0.00 |
| 08/20/2019 | $1,582.05 | | | Regular Payment Due | 05/20/2008 | $152,309.92 | | | | | | $146,163.88 | $0.00 | $0.00 | $2,874.00 | $0.00 |
| 08/27/2019 | | | $15.00 | Inspection Fee | 05/20/2008 | $152,309.92 | | | | | | $146,163.88 | $0.00 | $0.00 | $2,889.00 | $0.00 |
| 09/03/2019 | | | $71,003.00 | Corporate Advance | 05/20/2008 | $152,309.92 | | | | | | $146,163.88 | $0.00 | $0.00 | $73,892.00 | $0.00 |
| 09/03/2019 | | | $99,999.00 | Corporate Advance | 05/20/2008 | $152,309.92 | | | | | | $146,163.88 | $0.00 | $0.00 | $173,891.00 | $0.00 |
| 09/03/2019 | | | $99,999.00 | Corporate Advance | 05/20/2008 | $152,309.92 | | | | | | $146,163.88 | $0.00 | $0.00 | $273,890.00 | $0.00 |
| 09/03/2019 | | | $99,999.00 | Corporate Advance | 05/20/2008 | $152,309.92 | | | | | | $146,163.88 | $0.00 | $0.00 | $373,889.00 | $0.00 |
| 09/13/2019 | | | $15.00 | Inspection Fee | 05/20/2008 | $152,309.92 | | | | | | $146,163.88 | $0.00 | $0.00 | $373,904.00 | $0.00 |
| 09/16/2019 | | | ($71,003.00) | Corporate Advance Adjustment | 05/20/2008 | $152,309.92 | | | | | | $146,163.88 | $0.00 | $0.00 | $302,901.00 | $0.00 |
| 09/16/2019 | | | ($99,999.00) | Corporate Advance Adjustment | 05/20/2008 | $152,309.92 | | | | | | $146,163.88 | $0.00 | $0.00 | $202,902.00 | $0.00 |
| 09/16/2019 | | | ($99,999.00) | Corporate Advance Adjustment | 05/20/2008 | $152,309.92 | | | | | | $146,163.88 | $0.00 | $0.00 | $102,903.00 | $0.00 |
| 09/16/2019 | | | ($99,999.00) | Corporate Advance Adjustment | 05/20/2008 | $152,309.92 | | | | | | $146,163.88 | $0.00 | $0.00 | $2,904.00 | $0.00 |
| 09/20/2019 | $1,583.99 | | | Regular Payment Due | 05/20/2008 | $153,893.91 | | | | | | $146,163.88 | $0.00 | $0.00 | $2,904.00 | $0.00 |

4151-N-9759

Case number: 24-10004

Debtor 1: Bruce Blankenhorn

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/07/2019 | | | $15.00 | Inspection Fee | 05/20/2008 | $153,893.91 | | | | | | $146,163.88 | $0.00 | $0.00 | $2,919.00 | $0.00 |
| 10/20/2019 | $1,567.58 | | | Regular Payment Due | 05/20/2008 | $155,461.49 | | | | | | $146,163.88 | $0.00 | $0.00 | $2,919.00 | $0.00 |
| 11/20/2019 | $1,550.87 | | | Regular Payment Due | 05/20/2008 | $157,012.36 | | | | | | $146,163.88 | $0.00 | $0.00 | $2,919.00 | $0.00 |
| 11/26/2019 | | | $15.00 | Inspection Fee | 05/20/2008 | $157,012.36 | | | | | | $146,163.88 | $0.00 | $0.00 | $2,934.00 | $0.00 |
| 11/29/2019 | | | $15.00 | Inspection Fee | 05/20/2008 | $157,012.36 | | | | | | $146,163.88 | $0.00 | $0.00 | $2,949.00 | $0.00 |
| 12/11/2019 | | | $510.00 | Foreclosure Attorney Fee | 05/20/2008 | $157,012.36 | | | | | | $146,163.88 | $0.00 | $0.00 | $3,459.00 | $0.00 |
| 12/19/2019 | | | $420.00 | Title Cost | 05/20/2008 | $157,012.36 | | | | | | $146,163.88 | $0.00 | $0.00 | $3,879.00 | $0.00 |
| 12/20/2019 | $1,552.79 | | | Regular Payment Due | 05/20/2008 | $158,565.15 | | | | | | $146,163.88 | $0.00 | $0.00 | $3,879.00 | $0.00 |
| 12/27/2019 | | | ($15.00) | Inspection Fee | 05/20/2008 | $158,565.15 | | | | | | $146,163.88 | $0.00 | $0.00 | $3,864.00 | $0.00 |
| 01/02/2020 | | | $15.00 | Inspection Fee | 05/20/2008 | $158,565.15 | | | | | | $146,163.88 | $0.00 | $0.00 | $3,879.00 | $0.00 |
| 01/20/2020 | $1,536.39 | | | Regular Payment Due | 05/20/2008 | $160,101.54 | | | | | | $146,163.88 | $0.00 | $0.00 | $3,879.00 | $0.00 |
| 01/27/2020 | | | $15.00 | Inspection Fee | 05/20/2008 | $160,101.54 | | | | | | $146,163.88 | $0.00 | $0.00 | $3,894.00 | $0.00 |
| 02/20/2020 | $1,538.33 | | | Regular Payment Due | 05/20/2008 | $161,639.87 | | | | | | $146,163.88 | $0.00 | $0.00 | $3,894.00 | $0.00 |
| 02/24/2020 | | | $15.00 | Inspection Fee | 05/20/2008 | $161,639.87 | | | | | | $146,163.88 | $0.00 | $0.00 | $3,909.00 | $0.00 |
| 02/28/2020 | | | ($15.00) | Inspection Fee | 05/20/2008 | $161,639.87 | | | | | | $146,163.88 | $0.00 | $0.00 | $3,894.00 | $0.00 |
| 03/02/2020 | | | $2.80 | Certified Mail/Copies Cost | 05/20/2008 | $161,639.87 | | | | | | $146,163.88 | $0.00 | $0.00 | $3,896.80 | $0.00 |
| 03/02/2020 | | | $7.80 | Certified Mail/Copies Cost | 05/20/2008 | $161,639.87 | | | | | | $146,163.88 | $0.00 | $0.00 | $3,904.60 | $0.00 |
| 03/02/2020 | | | $70.80 | Certified Mail/Copies Cost | 05/20/2008 | $161,639.87 | | | | | | $146,163.88 | $0.00 | $0.00 | $3,975.40 | $0.00 |
| 03/02/2020 | | | $13.30 | Certified Mail/Copies Cost | 05/20/2008 | $161,639.87 | | | | | | $146,163.88 | $0.00 | $0.00 | $3,988.70 | $0.00 |
| 03/02/2020 | | | $1.00 | Certified Mail/Copies Cost | 05/20/2008 | $161,639.87 | | | | | | $146,163.88 | $0.00 | $0.00 | $3,989.70 | $0.00 |
| 03/02/2020 | | | $320.82 | Foreclosure Attorney Fee | 05/20/2008 | $161,639.87 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,310.52 | $0.00 |
| 03/02/2020 | | | $35.00 | Foreclosure Attorney Fee | 05/20/2008 | $161,639.87 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,345.52 | $0.00 |
| 03/02/2020 | | | $90.00 | Recording Cost | 05/20/2008 | $161,639.87 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,435.52 | $0.00 |
| 03/02/2020 | | | $99.00 | Recording Cost | 05/20/2008 | $161,639.87 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,534.52 | $0.00 |
| 03/20/2020 | $1,540.32 | | | Regular Payment Due | 05/20/2008 | $163,180.19 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,534.52 | $0.00 |
| 03/23/2020 | | | $15.00 | Inspection Fee | 05/20/2008 | $163,180.19 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,549.52 | $0.00 |
| 04/13/2020 | | | $15.00 | Inspection Fee | 05/20/2008 | $163,180.19 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,564.52 | $0.00 |
| 04/20/2020 | $1,541.45 | | | Regular Payment Due | 05/20/2008 | $164,721.64 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,564.52 | $0.00 |

4151-N-9759

Case number: 24-10004

Debtor 1: Bruce Blankenhorn

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/11/2020 | | | $15.00 | Inspection Fee | 05/20/2020 | $164,721.64 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,579.52 | $0.00 |
| 05/20/2020 | $1,440.45 | | | Regular Payment Due | 05/20/2008 | $166,162.09 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,579.52 | $0.00 |
| 06/08/2020 | | | $15.00 | Inspection Fee | 05/20/2020 | $166,162.09 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,594.52 | $0.00 |
| 06/20/2020 | $1,441.76 | | | Regular Payment Due | 05/20/2008 | $167,603.85 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,594.52 | $0.00 |
| 07/06/2020 | | | $15.00 | Inspection Fee | 05/20/2020 | $167,603.85 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,609.52 | $0.00 |
| 07/20/2020 | $1,443.47 | | | Regular Payment Due | 05/20/2008 | $169,047.32 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,609.52 | $0.00 |
| 08/07/2020 | | | $15.00 | Inspection Fee | 05/20/2020 | $169,047.32 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,624.52 | $0.00 |
| 08/20/2020 | $1,444.87 | | | Regular Payment Due | 05/20/2008 | $170,492.19 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,624.52 | $0.00 |
| 09/03/2020 | | | $15.00 | Inspection Fee | 05/20/2020 | $170,492.19 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,639.52 | $0.00 |
| 09/20/2020 | $1,446.67 | | | Regular Payment Due | 05/20/2008 | $171,938.86 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,639.52 | $0.00 |
| 10/07/2020 | | | $15.00 | Inspection Fee | 05/20/2020 | $171,938.86 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,654.52 | $0.00 |
| 10/20/2020 | $1,448.52 | | | Regular Payment Due | 05/20/2008 | $173,387.38 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,654.52 | $0.00 |
| 10/26/2020 | | | $15.00 | Inspection Fee | 05/20/2020 | $173,387.38 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,669.52 | $0.00 |
| 11/20/2020 | $1,450.05 | | | Regular Payment Due | 05/20/2008 | $174,837.43 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,669.52 | $0.00 |
| 11/23/2020 | | | ($15.00) | Inspection Fee | 05/20/2020 | $174,837.43 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,654.52 | $0.00 |
| 11/23/2020 | | | $15.00 | Inspection Fee | 05/20/2020 | $174,837.43 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,669.52 | $0.00 |
| 12/20/2020 | $1,452.00 | | | Regular Payment Due | 05/20/2008 | $176,289.43 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,669.52 | $0.00 |
| 12/23/2020 | | | $15.00 | Inspection Fee | 05/20/2020 | $176,289.43 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,684.52 | $0.00 |
| 01/20/2021 | $1,453.62 | | | Regular Payment Due | 05/20/2008 | $177,743.05 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,684.52 | $0.00 |
| 01/21/2021 | | | $15.00 | Inspection Fee | 05/20/2020 | $177,743.05 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,699.52 | $0.00 |
| 02/12/2021 | | | $15.00 | Inspection Fee | 05/20/2020 | $177,743.05 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,714.52 | $0.00 |
| 02/20/2021 | $1,455.67 | | | Regular Payment Due | 05/20/2008 | $179,198.72 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,714.52 | $0.00 |
| 03/17/2021 | | | $15.00 | Inspection Fee | 05/20/2020 | $179,198.72 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,729.52 | $0.00 |
| 03/20/2021 | $1,457.76 | | | Regular Payment Due | 05/20/2008 | $180,656.48 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,729.52 | $0.00 |
| 04/09/2021 | | | $15.00 | Inspection Fee | 05/20/2020 | $180,656.48 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,744.52 | $0.00 |
| 04/19/2021 | | | $90.90 | Certified Mail/Copies Cost | 05/20/2020 | $180,656.48 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,835.42 | $0.00 |
| 04/19/2021 | | | $10.65 | Certified Mail/Copies Cost | 05/20/2020 | $180,656.48 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,846.07 | $0.00 |
| 04/19/2021 | | | $2.80 | Certified Mail/Copies Cost | 05/20/2020 | $180,656.48 | | | | | | $146,163.88 | $0.00 | $0.00 | $4,848.87 | $0.00 |

Case: 24-10004   Claim #: 211   Filed: 05/01/24   Desc: Main Document   Page 13 of 45
4151-N-9759

Case number: 24-10004

Debtor 1: Bruce Blankenhorn

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | Account Activity C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | How Funds Were Applied / Amount Incurred H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | Balance After Amount Received or incurred M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/19/2021 | | | $595.00 | Foreclosure Attorney Fee | 05/20/2008 | $180,656.48 | | | | | | $146,163.88 | $0.00 | $0.00 | $5,443.87 | $0.00 |
| 04/19/2021 | | | $35.00 | Sale Cost | 05/20/2008 | $180,656.48 | | | | | | $146,163.88 | $0.00 | $0.00 | $5,478.87 | $0.00 |
| 04/19/2021 | | | $125.00 | Posting Cost | 05/20/2008 | $180,656.48 | | | | | | $146,163.88 | $0.00 | $0.00 | $5,603.87 | $0.00 |
| 04/19/2021 | | | $1,765.33 | Advertise/Publication Cost | 05/20/2008 | $180,656.48 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,369.20 | $0.00 |
| 04/19/2021 | | | $100.00 | Foreclosure Attorney Fee | 05/20/2008 | $180,656.48 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,469.20 | $0.00 |
| 04/19/2021 | | | $96.00 | Recording Cost | 05/20/2008 | $180,656.48 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,565.20 | $0.00 |
| 04/20/2021 | $1,458.78 | | | Regular Payment Due | 05/20/2008 | $182,115.26 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,565.20 | $0.00 |
| 04/22/2021 | | | ($15.00) | Inspection Fee | 05/20/2008 | $182,115.26 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,550.20 | $0.00 |
| 05/20/2021 | $1,460.98 | | | Regular Payment Due | 05/20/2008 | $183,576.24 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,550.20 | $0.00 |
| 06/20/2021 | $1,462.86 | | | Regular Payment Due | 05/20/2008 | $185,039.10 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,550.20 | $0.00 |
| 06/21/2021 | | | $15.00 | Inspection Fee | 05/20/2008 | $185,039.10 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,565.20 | $0.00 |
| 07/08/2021 | | | $15.00 | Inspection Fee | 05/20/2008 | $185,039.10 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,580.20 | $0.00 |
| 07/20/2021 | $1,465.16 | | | Regular Payment Due | 05/20/2008 | $186,504.26 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,580.20 | $0.00 |
| 08/06/2021 | | | $15.00 | Inspection Fee | 05/20/2008 | $186,504.26 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,595.20 | $0.00 |
| 08/20/2021 | $1,467.14 | | | Regular Payment Due | 05/20/2008 | $187,971.40 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,595.20 | $0.00 |
| 08/30/2021 | | | $1.02 | Certified Mail/Copies Cost | 05/20/2008 | $187,971.40 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,596.22 | $0.00 |
| 08/30/2021 | | | $35.00 | Sale Cost | 05/20/2008 | $187,971.40 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,631.22 | $0.00 |
| 08/30/2021 | | | $90.00 | Recording Cost | 05/20/2008 | $187,971.40 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,721.22 | $0.00 |
| 08/30/2021 | | | $100.00 | Foreclosure Attorney Fee | 05/20/2008 | $187,971.40 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 09/20/2021 | $1,469.56 | | | Regular Payment Due | 05/20/2008 | $189,440.96 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 10/20/2021 | $1,472.04 | | | Regular Payment Due | 05/20/2008 | $190,913.00 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 11/20/2021 | $1,474.18 | | | Regular Payment Due | 05/20/2008 | $192,387.18 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 12/20/2021 | $1,476.77 | | | Regular Payment Due | 05/20/2008 | $193,863.95 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 01/20/2022 | $1,479.02 | | | Regular Payment Due | 05/20/2008 | $195,342.97 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 02/20/2022 | $1,481.73 | | | Regular Payment Due | 05/20/2008 | $196,824.70 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 03/20/2022 | $1,484.50 | | | Regular Payment Due | 05/20/2008 | $198,309.20 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 04/20/2022 | $1,500.90 | | | Regular Payment Due | 05/20/2008 | $199,810.10 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 05/20/2022 | $1,503.52 | | | Regular Payment Due | 05/20/2008 | $201,313.62 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |

Case 24-10004   Claim 7-1   Filed 05/01/24   Desc Main Document   Page 14 of 45

4151-N-9759

Case number: 24-10004

Debtor 1: Bruce Blankenhorn

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | Account Activity C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | How Funds Were Applied / Amount Incurred H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | Balance After Amount Received or incurred M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/20/2022 | $1,506.19 | | | Regular Payment Due | 05/20/2008 | $202,819.81 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 07/20/2022 | $1,583.04 | | | Regular Payment Due | 05/20/2008 | $204,402.85 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 08/20/2022 | $1,585.16 | | | Regular Payment Due | 05/20/2008 | $205,988.01 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 09/20/2022 | $1,589.16 | | | Regular Payment Due | 05/20/2008 | $207,577.17 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 10/20/2022 | $1,682.59 | | | Regular Payment Due | 05/20/2008 | $209,259.76 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 11/20/2022 | $1,685.66 | | | Regular Payment Due | 05/20/2008 | $210,945.42 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 12/20/2022 | $1,690.85 | | | Regular Payment Due | 05/20/2008 | $212,636.27 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 01/20/2023 | $1,740.35 | | | Regular Payment Due | 05/20/2008 | $214,376.62 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 02/20/2023 | $1,776.37 | | | Regular Payment Due | 05/20/2008 | $216,152.99 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 03/20/2023 | $1,782.71 | | | Regular Payment Due | 05/20/2008 | $217,935.70 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 04/20/2023 | $1,816.85 | | | Regular Payment Due | 05/20/2008 | $219,752.55 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 05/20/2023 | $1,823.25 | | | Regular Payment Due | 05/20/2008 | $221,575.80 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 06/20/2023 | $1,829.43 | | | Regular Payment Due | 05/20/2008 | $223,405.23 | | | | | | $146,163.88 | $0.00 | $0.00 | $7,821.22 | $0.00 |
| 07/06/2023 | | | $570.00 | Foreclosure Attorney Fee | 05/20/2008 | $223,405.23 | | | | | | $146,163.88 | $0.00 | $0.00 | $8,391.22 | $0.00 |
| 07/07/2023 | | | $20.00 | Inspection Fee | 05/20/2008 | $223,405.23 | | | | | | $146,163.88 | $0.00 | $0.00 | $8,411.22 | $0.00 |
| 07/14/2023 | | | $260.82 | Foreclosure Attorney Fee | 05/20/2008 | $223,405.23 | | | | | | $146,163.88 | $0.00 | $0.00 | $8,672.04 | $0.00 |
| 07/17/2023 | | | $420.00 | Title Cost | 05/20/2008 | $223,405.23 | | | | | | $146,163.88 | $0.00 | $0.00 | $9,092.04 | $0.00 |
| 07/20/2023 | $1,851.46 | | | Regular Payment Due | 05/20/2008 | $225,256.69 | | | | | | $146,163.88 | $0.00 | $0.00 | $9,092.04 | $0.00 |
| 08/07/2023 | | | $30.00 | Inspection Fee | 05/20/2008 | $225,256.69 | | | | | | $146,163.88 | $0.00 | $0.00 | $9,122.04 | $0.00 |
| 08/20/2023 | $1,858.01 | | | Regular Payment Due | 05/20/2008 | $227,114.70 | | | | | | $146,163.88 | $0.00 | $0.00 | $9,122.04 | $0.00 |
| 09/08/2023 | | | $30.00 | Inspection Fee | 05/20/2008 | $227,114.70 | | | | | | $146,163.88 | $0.00 | $0.00 | $9,152.04 | $0.00 |
| 09/20/2023 | $1,880.36 | | | Regular Payment Due | 05/20/2008 | $228,995.06 | | | | | | $146,163.88 | $0.00 | $0.00 | $9,152.04 | $0.00 |
| 09/26/2023 | | | $3.78 | Certified Mail/Copies Cost | 05/20/2008 | $228,995.06 | | | | | | $146,163.88 | $0.00 | $0.00 | $9,155.82 | $0.00 |
| 09/26/2023 | | | $5.22 | Certified Mail/Copies Cost | 05/20/2008 | $228,995.06 | | | | | | $146,163.88 | $0.00 | $0.00 | $9,161.04 | $0.00 |
| 09/26/2023 | | | $5.55 | Certified Mail/Copies Cost | 05/20/2008 | $228,995.06 | | | | | | $146,163.88 | $0.00 | $0.00 | $9,166.59 | $0.00 |
| 09/26/2023 | | | $29.88 | Certified Mail/Copies Cost | 05/20/2008 | $228,995.06 | | | | | | $146,163.88 | $0.00 | $0.00 | $9,196.47 | $0.00 |
| 09/26/2023 | | | $24.72 | Certified Mail/Copies Cost | 05/20/2008 | $228,995.06 | | | | | | $146,163.88 | $0.00 | $0.00 | $9,221.19 | $0.00 |
| 09/26/2023 | | | $96.00 | Recording Cost | 05/20/2008 | $228,995.06 | | | | | | $146,163.88 | $0.00 | $0.00 | $9,317.19 | $0.00 |

4151-N-9759

Case number:     24-10004

Debtor 1:     Bruce Blankenhorn

### Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Account Activity | | | How Funds Were Applied / Amount Incurred | | | | | Balance After Amount Received or incurred | | | | |
| 09/27/2023 | | | $25.00 | Payoff Statement Fee | 05/20/2008 | $228,995.06 | | | | | | $146,163.88 | $0.00 | $0.00 | $9,342.19 | $0.00 |
| 10/05/2023 | | | $30.00 | Inspection Fee | 05/20/2008 | $228,995.06 | | | | | | $146,163.88 | $0.00 | $0.00 | $9,372.19 | $0.00 |
| 10/20/2023 | $1,887.66 | | | Regular Payment Due | 05/20/2008 | $230,882.72 | | | | | | $146,163.88 | $0.00 | $0.00 | $9,372.19 | $0.00 |
| 11/20/2023 | $1,894.69 | | | Regular Payment Due | 05/20/2008 | $232,777.41 | | | | | | $146,163.88 | $0.00 | $0.00 | $9,372.19 | $0.00 |
| 11/28/2023 | | $1,503.79 | | Payment Received | 05/20/2008 | $232,777.41 | | | | | $1,503.79 | $146,163.88 | $0.00 | $0.00 | $9,372.19 | $1,503.79 |
| 12/20/2023 | $1,902.76 | | | Regular Payment Due | 05/20/2008 | $234,680.17 | | | | | | $146,163.88 | $0.00 | $0.00 | $9,372.19 | $1,503.79 |
| 01/05/2024 | | | | Petition Date | 05/20/2008 | $234,680.17 | | | | | | $146,163.88 | $0.00 | $0.00 | $9,372.19 | $1,503.79 |

Case: 24-10004   Claim #7211   Filed 05/02/24   Desc Main Document   15:52:27   Page Page 16 of 45

4151-N-9759

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | Bruce  Blankenhorn |
| | aka Bruce A. Blankenhorn aka Bruce Allan Blankenhorn dba Wealth Business Alliance |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Northern    District of    California (State) |
| Case number | 24-10004 |

## Mortgage Proof of Claim Attachment: Addendum

**Additional Claim Itemization:**

| Loan History Date | Actual Date Incurred | Description | Amount |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**POC Special Language:**

Debtor(s) executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor, has been duly indorsed, or creditor, directly or through an agent, has possession of the promissory note and may enforce the promissory note as a transferee in possession. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust. If the original promissory note is lost or destroyed, then Creditor will seek to prove the promissory note using a lost note affidavit.

The monthly payment consists of accrued finance charges on the Principal Balance as defined in the attached agreement.  As such, ongoing post-petition payments can change each month depending on the account balance during each billing cycle.  Please reference the attached agreement for a more detailed breakdown of how monthly charges are calculated.

MIN:
DATE: FEBRUARY 22, 2006
BORROWER: BRUCE BLANKENHORN

STEWART TITLE COMPANY
hereby certifies that this is a true copy
of the original.

LOAN #:
PROPERTY ADDRESS: 455 CROSS STREET, NAPA, CALIFORNIA 94558

## HOME EQUITY CREDIT LINE AGREEMENT AND
## DISCLOSURE STATEMENT

This Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") governs my Home Equity Credit Line Account ("Account") with you, PREFERRED FINANCIAL GROUP, INC. DBA PREFERRED MORTGAGE SERVICES, A CALIFORNIA CORPORATION
The words "I," "me" and "my" refer to the Borrower signing this Agreement. If more than one Borrower signs this Agreement, the words "I," "me" and "my" refer to all who sign, separately and together. The words "you" and "your" refer to PREFERRED FINANCIAL GROUP, INC. DBA PREFERRED MORTGAGE SERVICES, A CALIFORNIA CORPORATION

**1. LOANS: DRAW AND REPAYMENT PERIOD.** Subject to the limitations explained in this Agreement, upon my request for loans, you agree to lend money to me from time to time until the last day of the sixtieth (60th) consecutive calendar month following the date set forth above ("Initial Draw Period,") or until the last day of any renewed Draw Period, up to my Credit Limit indicated in paragraph 5 below. (You will not make any loans if my Account is sooner terminated or suspended under paragraphs 12.B, 12.D, 13.B or 17.A below.) You will not make any loan before the fourth business day following the signing of this Agreement, except to the extent that the proceeds of this loan are for the purchase of the Property.

I agree that prior to the end of the Initial Draw Period, you have the right to review my Account to decide whether such Initial Draw Period will be renewed. Unless you have sent me written notice not later than the sixtieth (60th) day before the Initial Draw Period ends that you have decided not to renew such Initial Draw Period, such Initial Draw Period will automatically renew for one additional sixty (60) month period, and the Draw Period on my Account shall thereafter be considered to be 120 months for purposes of this Agreement. If the Initial Draw Period is not renewed, then the Draw Period on my Account shall thereafter be considered to be 60 months for purposes of this Agreement.

After the Draw Period ends, I will no longer be able to obtain loans and then must pay the outstanding balance over the specified Repayment Period unless my Account is sooner terminated under paragraph 13.B below, in which case my Account is due and payable in full at the time of such termination. The Repayment Period shall be 180 months.

**2. MAKING LOANS.** You will make loans under this Agreement (up to my Available Credit Limit) by (i) honoring Equity Credit Line Checks you provide to me requesting advances of at least $250; (ii) if you issue an access card ("Card"); by honoring advances I request by using the Card at any Merchant or servicer provider ("Merchant") or any participating automated teller ("ATM") networks; (iii) paying closing costs and finance charges in accordance with paragraph 8.C below; (iv) paying certain other amounts on my behalf in accordance with my disbursement authorization provided to you at or before the time I sign this Agreement; (v) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the Deed of Trust; or (vi) any other method or procedure you establish.

**3. SPECIAL CARD TERMS AND CONDITIONS.** I understand that you, in your sole discretion and at your sole option, may cause to be issued a Card, as an access device and an additional means by which I may obtain advances under the Account. By applying for the Account, I have requested that you issue the Card to me if my application is approved and if you, at your option and in your sole discretion, provide access to my/our Account by the Card after the Account is opened. If one or more Cards are issued to me as a means of obtaining loan advances on my Account, I agree that my use of the Card and any related loan advances will be governed by the following terms and conditions unless I cancel my card within [30] days of receiving the Card and have not authorized the use of the Card or Card account number. I also agree to comply with any agreement between me and the Card Issuer:

A. <u>Account Access</u>. In addition to any means by which I may access my Account as described in the Agreement, I may be permitted to obtain (up to my Available Credit Limit) loan advances by using any Card you provide, at any merchant or service provider ("Merchant") that allows me to use the Card to pay for goods or services. If you provide me with a Personal Identification Number ("PIN"), I may also obtain loan advances by using the Card at participating automated teller machine ("ATM") networks. I agree not to write my PIN on my Card(s) or disclose it to others. If I use my Card at an ATM, I understand that the owner of the ATM may charge me a fee for the transaction. I understand that in order to use my Card at an ATM, I must call 1-800-669-5864 to request a PIN. I also understand that Card loan advances (whether at a Merchant or ATM) may be subject to transactional limits that could restrict the full use of my Available Credit Limit. There are no minimum draw requirements that apply when I use the Card, except for any limits that may be imposed separately by a Merchant or ATM owner. I agree that if you decide in your sole discretion to approve any transactions above my Available Credit Limit, I will be responsible for the full amount of any such advances. I understand that if I make reservations or purchases of any kind using my Card, my Account may be immediately charged for the full amount of the reservation or purchase, regardless of whether I have received the goods or services requested at the time my Account is charged.

B. <u>Liability</u>. I agree that all borrowers who have executed the Agreement are jointly and severally liable under the terms of the Agreement for any Card transactions that are posted to the Account, whether or not a Card has been issued to all borrowers.

C. <u>Authorizations</u>. All Card transactions are processed through the applicable bankcard networks that are branded on the Card ("Bankcard Networks") according to the requirements and procedures of the Bankcard Networks. Some Card transactions may require prior authorization by you or pursuant to the requirements and procedures of the Bankcard Networks before they are approved for processing. The Bankcard Networks may refuse to process any Card transaction if it appears to be illegal or fraudulent, or if the Merchant or the transaction does not otherwise meet the requirements of the Bankcard Networks. In addition, you or the Card Issuer may deny authorization for any Card transaction if my Account has been suspended or terminated. I also agree that if you or the Card Issuer detects any suspicious or unusual use, you or the Card Issuer may suspend use of any Card.

D. <u>Lawful Transactions</u>. I agree to use my Card only for valid and lawful purposes. If I use my Card for any other purpose or transaction (herein called a ("Prohibited Activity"), including, without limitation, gambling activities, I agree to promptly reimburse you, the Card issuer (if other than you) and the Bankcard Networks for all amounts or expenses paid by any such party as a result of such use. You reserve the right to block any Prohibited Activity and/or to not approve any authorization request for a Prohibited Activity. Card transactions for any Prohibited Activity made by me or for my benefit shall be considered authorized by me. You will not be liable if I engage in any Prohibited Activity using the Card, and I will be responsible for the full amount of any loan advances made in connection with such Prohibited Activity. Display by an online merchant of the service mark of any Bankcard Network branded on the Card does not mean that a Card transaction over the Internet is legal where I reside.

E. <u>Transactions With Merchants</u>. I understand and agree that: (1) If a Merchant discloses a policy such as "no returns", "no refund", "no return or credit without receipt", "as is", "store credit only", "all sales final", or similar language, I will be bound by that policy when I use my Card to pay for goods or services from that Merchant; (2) When using my Card to make travel or lodging reservations, I must obtain the Merchant's cancellation policy and follow it if I cancel the reservations. If I cancel, I must obtain the cancellation number that the Merchant is required to give me pursuant to the requirements and procedures of the Bankcard Networks. The Merchant may charge me for a cancelled transaction unless I can provide you with a correct cancellation number. (3) If I authorize a Merchant to charge repeat transactions to my Account without my presenting my Card for each charge, then I must notify the Merchant when I want to discontinue the repeat transactions or if my Account is suspended or closed. Otherwise, I will be responsible to you for the amount of all such repeat transactions. I understand that if my loan advance privileges or my use of the Card is suspended or cancelled for any reason, it is my responsibility to pay for such repeat transactions directly until loan advance privileges and/or Card use are reinstated. (4) If I disagree with any transaction on my monthly statement or have a dispute with any Merchant as a result of a Card transaction, I agree to comply with the section entitled MY BILLING RIGHTS - I SHOULD KEEP THIS NOTICE FOR FUTURE USE in my Agreement. I will promptly provide you with such information or assistance as you reasonably request.

F. <u>Foreign Transactions</u>. I agree to pay you in U.S. dollars. If I make a Card transaction in a foreign currency, the appropriate Bankcard Network will convert the transaction amount into U.S. dollars at the rates, and in accordance with its operating regulations in effect at the time the transaction is processed. Currently, the regulations of the Bankcard Networks provide that the currency conversion rate to be used is either a wholesale market rate selected by the Bankcard Networks or a government-mandated rate, each in effect one day prior to the processing date, plus an adjustment factor (currently 1%) established by the Bankcard Networks. The Bankcard Networks may change the currency conversion rate, and the formula used to establish that rate, from time to time. The currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may be the same as, greater than or less than the amount that would be calculated by conversion through a financial institution in the country in which the transaction occurred. I understand that you do not determine the currency conversion rate or the formula to establish the rate that is used by the Bankcard Networks and that you do not receive any portion of the currency conversion rate used by the Bankcard Networks.

G. <u>Limitation of Liability</u>. Your liability to me, if any, for wrongful dishonor of any loan request I make using my Card is limited to my actual damages. I also agree that you are not responsible if any transaction is not approved, whether by you, a Merchant, Bankcard Network, or a third party, even if I have sufficient credit available.

H. <u>Termination/Suspension of Account</u>. Upon any termination or cancellation of my Account by you or by me, or any suspension of my loan advance privileges under the Agreement, I agree that all Cards will be destroyed by me upon your instruction, or may be retrieved by you or your agent.

I. <u>Cancellation/Expiration of Cards</u>. I may be permitted to use the Card to access my account only so long as the access card program remains active and you permit me to participate in the program. If more than one person has executed the Agreement, any one of us may request that our Cards be cancelled. The request, at your option, may be made verbally or in writing. You may also cancel any Card at your sole discretion at any time, including if (1) the contracts with current or future providers of services used to operate the Card program expire or are terminated; or (2) I have not used my Card to obtain a loan advance on my Account at least once during any 12 month period; (3) my card is lost, stolen, or otherwise subject to unauthorized use; or (4) any part of the Program, including use of the Card, is prohibited by applicable law. I understand and agree that the terms governing my ability to obtain loan advances during the Initial Draw Period and any renewed Draw Period are set forth in the Agreement and that those terms supersede any inconsistent expiration date(s) printed on any Cards that are issued to me to the extent that such expiration date(s) is (are) later than the expiration date of any Draw period defined in the Agreement.

J. <u>Lost or Stolen Cards</u>. I agree to promptly notify you at 1-800-556-5678 if any Card is lost or stolen, or if I suspect unauthorized use. You reserve the right not to honor any loan advance request made using a Card if any of my Cards has been cancelled or reported lost or stolen.

K. Unauthorized Transactions. I will not be liable for the unauthorized use of my Card. I agree to assist you in your investigation of any claims of unauthorized Card transactions and understand that I may be required to provide you with a written statement and/or an Affidavit of Forgery. I agree that if I permit a person to use the Card or Card account number, or if I benefit from another person's use of the Card or Card account number, such use is not unauthorized use of the Card, even if I did not intend to be responsible for such use.

L. Special Rule for Card Purchases. The following is in addition to the notice at the end of the Agreement entitled MY BILLING RIGHTS - I SHOULD KEEP THIS NOTICE FOR FUTURE USE:

Special Rule for Card Purchases.
If I have a problem with the quality of property or services that I purchased with my Card, and I have tried in good faith to correct the problem with the merchant, I may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

    (a)    I must have made the purchase in my home state or, if not within my home state, within 100 miles of my current mailing address; and.

    (b)    The purchase price must have been more than $50. These limitations do not apply if you or the Card Issuer own or operate the merchant, or if you or the Card Issuer mailed me the advertisement for the property or services.

## 4. PROMISE TO PAY; MINIMUM PAYMENT; METHOD OF PAYMENT.

A. I promise to pay to your order, when and as due, all loans made under this Agreement, plus all unpaid finance charges, insurance premiums, collection costs and other charges I owe to you now or in the future. I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt.

B. At a minimum, you will send me a periodic statement monthly, except that my first periodic statement may be generated and mailed to me between thirty and sixty days after I open my Account. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance", my Annual Percentage Rate, the amount of my "Minimum Payment Due", my "Payment Due Date" and the place and manner of making payments.

C. I may pay all or any part of my "New Balance" at any time, subject to an Account Termination Fee described in paragraph 8.D below. As periodic finance charges will accrue on my Account balance until it is fully repaid, any periodic finance charges incurred for the billing cycle in which full payment of the New Balance shown on the previous periodic statement is received by you will be reflected on my next periodic statement. If I want to include those finance charges with the payment of the New Balance shown on my previous periodic statement, I will contact PREFERRED FINANCIAL GROUP, INC. DBA PREFERRED MORTGAGE SERVICES, 112 PARK PLACE, MILLBRAE, CALIFORNIA 94030

for details concerning the amount I must include.

D. I may pay all or any part of my "New Balance" using an Equity Credit Line Check ("Check"). If I use a check to pay all or any part of my New Balance, I understand that:

    (1)    The amount of the Check will be treated as any other advance is treated under the terms and conditions of my Account. My Check will not be honored if I do not have sufficient availability on my Account.

    (2)    If I make a payment using a Check, my principal balance will not decrease. The principal balance will increase by the amount of the Check.

    (3)    Interest will accrue on the total increased principal balance when I use a Check to make a payment on my Account.

    (4)    I may not use a Check to make a payment once the Draw Period ends. That is, a Check may not be used to make a payment during the Repayment Period.

E. Unless you terminate my Account and require immediate payment of the entire outstanding balance as provided in paragraph 13.B below, I must pay you at least the "Minimum Payment Due" for each billing cycle by the "Payment Due Date" shown on my periodic statement.

F. During the Draw Period, my "Minimum Payment Due" equals all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." My "Minimum Payment Due" during the Draw Period will not reduce the principal balance that is outstanding on my account.

G. During the Repayment Period, if the Draw Period on my Account is 60 months or 120 months, my "Minimum Payment Due" equals 1/180th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due."

5. CREDIT LIMIT. My Credit Limit under this Agreement is $146,250.00    . I promise not to request a loan which will cause the unpaid principal balance of my Account to exceed my Credit Limit. You can increase the Credit Limit at any time without prior notice to me. You can refuse to make loans that cause my obligations under this Agreement to exceed my Credit Limit. You will make loans on my Account based on the "Available Credit Limit" shown on my most recent periodic statement. However, I agree that when I make payments on my Account by check or other non-cash method, you reserve the right to make

loans based on the "Available Credit Limit" shown on the last periodic statement issued prior to the most recent periodic statement. In addition to each "Minimum Payment Due," I must pay immediately, without notice or demand from you, any part of the principal balance of my Account that exceeds my Credit Limit.

## 6. ANNUAL PERCENTAGE RATE.
*One box must be checked by Lender.*

☐ A. The initial Daily Periodic Rate is _____ %. The initial ANNUAL PERCENTAGE RATE is _____ %. These rates are "discounted" rates. This means that these rates are lower than the rates that would be in effect if the formula set forth in paragraph 6.C below had been used; in which event the initial Daily Periodic Rate would be _____ % and the initial ANNUAL PERCENTAGE RATE would be _____ %. These discounted rates will be in effect from the date of this Agreement until _____ . Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 6.C below.

☒ B. The initial Daily Periodic Rate is      0.03288 % and the initial ANNUAL PERCENTAGE RATE is 12.000 %. These rates are not discounted.

C. My Annual Percentage Rate and Daily Periodic Rate may increase or decrease (beginning with the first day of the first billing cycle after my "discounted" rate has expired, if applicable) according to the following procedure: The ANNUAL PERCENTAGE RATE shall be the "Index" plus a "Margin." The "Index" will be the highest Prime Rate as published in the "Money Rates" table of The Wall Street Journal as of the first business day of the calendar month. The "Margin" is equal to the number of percentage points disclosed in paragraph 6.D below. Each billing cycle will end on the last day of the calendar month. Any new Index value shall be effective as of the first day of the billing cycle in which such new Index value is established.

Upon a change in the Index, any resulting change in my Daily Periodic Rate and Annual Percentage Rate will take effect without prior notice to me, and will apply to new loans and to the outstanding principal balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid principal balance and all new loans I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the ANNUAL PERCENTAGE RATE divided by 365.

D. The "Margin" to be used under paragraph 6.C above to determine my ANNUAL PERCENTAGE RATE is     4.500 %.

E. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and not other costs. The ANNUAL PERCENTAGE RATE will never increase above     18.000%.

F. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay additional periodic finance charges and, as a result, I will have to pay larger "Minimum Payments."

## 7. FINANCE CHARGE.  I agree to pay a finance charge on my Account as explained below.

A. Periodic FINANCE CHARGE.

(1) A loan represented by an Equity Credit Line Check will be posted to my Account on the date that such a check is presented to you for payment. Any loan advance represented by a Card transaction will be posted to my Account as of the date that you receive the transaction for processing. The periodic finance charge begins to accrue on my Account from the time a loan is posted to my Account. There is no grace period during which I can repay loan advances without incurring a periodic finance charge.

(2) You compute the periodic finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" in my Account (including current transactions). To determine the periodic finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(3) To get the "Average Daily Balance," you take the beginning principal balance of my Account each day, add any new loans and subtract any principal payments or credits. This gives you the Daily Balance. Then you add up all the Daily Balances for the billing cycle and divide by the total number of days in the billing cycle. This gives you the "Average Daily Balance."

B. Other FINANCE CHARGES.

(1) Points FINANCE CHARGE.

I agree to pay a Points FINANCE CHARGE of $ _____ at the time I sign this Agreement.
SEE "ADDENDUM TO AGREEMENT AND DISCLOSURE STATEMENT" ATTACHED HERETO AND MADE A PART HEREOF

| | |
|---|---|
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |

Initials _____

(2) Broker Fee FINANCE CHARGES. SEE "ADDENDUM TO AGREEMENT AND DISCLOSURE STATEMENT" ATTACHED HERETO AND MADE A PART HEREOF

I agree to pay Broker Fee FINANCE CHARGES of $ _____ at the time I sign this Agreement.

|  | $ |
| --- | --- |
|  | $ |
|  | $ |
|  | $ |
|  | $ |

(3) Settlement Agent FINANCE CHARGES. SEE "ADDENDUM TO AGREEMENT AND DISCLOSURE STATEMENT" ATTACHED HERETO AND MADE A PART HEREOF

I agree to pay the following Settlement Agent FINANCE CHARGES at the time I sign this Agreement:

| Sub Escrow/Full Escrow | $ |
| --- | --- |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |

(4) Miscellaneous FINANCE CHARGES. SEE "ADDENDUM TO AGREEMENT AND DISCLOSURE STATEMENT" ATTACHED HERETO AND MADE A PART HEREOF

I agree to pay the following Miscellaneous FINANCE CHARGES at the time I sign this Agreement:

|  | $ |
| --- | --- |
|  | $ |
|  | $ |
|  | $ |

(5) Annual Maintenance Fee FINANCE CHARGES.

[X] I agree to pay an annual maintenance fee FINANCE CHARGE of $75 which you will charge to my Account on the first anniversary of this Agreement and every anniversary date thereafter, whether or not I have used or continue to use my Account; except that such fee shall be waived for the entire term of this Agreement if I meet both of the following conditions: (a) I maintain an average outstanding daily balance which does not fall below $20,000 from the date of this Agreement through the first anniversary of this Agreement; and (b) I make each monthly payment during that period on or before the due date for each such payment. You will not rebate any portion of the annual fee if my Account is terminated or suspended before the end of any annual period.

[ ] I will not be charged an annual maintenance fee FINANCE CHARGE on this loan.

8. OTHER CHARGES.

A. I agree to pay each of the charges listed below, which shall constitute additional indebtedness under this Agreement. Any charges assessed will be shown on my periodic statement for the billing cycle in which such charge is assessed:

(1) If I fail to make my "Minimum Payment Due" within 15 days of the "Payment Due Date," I agree to pay a late fee of 5% of the late payment or $5.00, whichever is greater.

(2) I agree to pay a Return Item Fee of $15 for each check you receive in payment of my Account which is returned unpaid upon second presentment.

B. I agree to pay you or my broker the following closing costs at or before the time I sign this Agreement:
SEE "ADDENDUM TO AGREEMENT AND DISCLOSURE STATEMENT" ATTACHED HERETO AND MADE A PART HEREOF

| Survey | $ |
| --- | --- |
| Appraisal | $ |
| Document Preparation Fee | $ |
| Credit Report | $ |
| Stamp Tax | $ |
| Recording Fee | $ |
| Title Search | $ |
| Title Insurance | $ |
| Title Guaranty | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
| LESS Amounts Paid by Lender | $ |

SEE "ADDENDUM TO AGREEMENT AND DISCLOSURE STATEMENT" ATTACHED HERETO AND MADE A PART HEREOF

| Total Paid by Borrower | $ |
| --- | --- |

Initials: ___

C. I may elect to pay the closing costs described in paragraph 8.B above and the finance charges described in paragraph 7.B above in cash or by check at or before the time I sign this Agreement or I may elect to finance some or all of such costs and finance charges by allowing you to make a loan-under my Account to pay some or all of such costs and finance charges.

D. I agree to pay an Account Termination Fee (considered a prepayment penalty under federal law) of $350 to cover your costs of processing and administering my Account, if I pay in full and terminate my Account with you and ask you to satisfy my mortgage lien on or before the fifth (5th) anniversary of this Agreement.

E. I agree to pay a Demand Statement Fee of $ 3 0 . 0 0      for furnishing a statement of the amount necessary to pay in full the debt evidenced by this Agreement. I agree to pay this fee upon payment in full of the Account.

F. I agree to pay a Reconveyance Preparation Fee of $ 4 5 . 0 0      for delivering a full reconveyance of the deed-of-trust securing the debt evidenced by this Agreement.

9. PROPERTY SECURITY. To secure the payment of all loans I obtain and the performance of all promises I make in this Agreement, I and all co-owners are giving you a Deed of Trust (the "Deed of Trust") covering my dwelling located at 455 CROSS STREET, NAPA, CALIFORNIA 94559 (the "Property"). The Deed of Trust is security for my current and future obligations under this Agreement. I will continue to be obligated to make payment to you under this Agreement even if the Property is damaged or destroyed and whether or not any insurance proceeds are available.


10. SECTION INTENTIONALLY OMITTED.

11. PROPERTY INSURANCE. I agree to obtain and maintain property insurance against loss or damage to the Property, in such amounts, against such risks (including, but not limited to, flood damage insurance required by law), and according to such terms as you may require in the Deed of Trust or otherwise. I may obtain property insurance from any company of my choice that is acceptable to you. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

12. YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOANS OR REDUCE MY CREDIT LIMIT.

A. You may take the actions listed in paragraph 12.B below during the period that any of the following events or conditions occur:

    (1)    the value of the Property declines significantly below its appraised value for the purposes of my Account;

    (2)    you reasonably believe that I will not be able to meet the repayment requirements under my Account due to a material change in my financial circumstances, such as the filing of a bankruptcy petition by or against me;

    (3)    I am in default of any material obligation of this Agreement, such as my important obligations listed in paragraph 15 below;

    (4)    government action (such as enactment of a state usury law) prevents you from imposing the Annual Percentage Rate provided for in this Agreement;

    (5)    government action (such as imposition of a tax lien) impairs the priority of the lien of the Deed of Trust such that the value of the lien of the Deed of Trust is less than 120% of my Credit Limit;

    (6)    the maximum Annual Percentage Rate set forth in paragraph 6.E above is reached;

    (7)    the creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

B. During the period in which a condition described in paragraph 12.A above occurs, you may refuse to make any additional loans or reduce my Credit Limit or do both. You will mail or deliver written notice to me after you suspend my Account or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my credit privileges when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 12.A above or 13.A below have occurred.

C. Before reinstating my right to obtain loans, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and you may require me to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take these steps to verify that (i) the condition(s) that caused your suspension of my loans or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of the Deed of Trust is not impaired.

D. If more than one Borrower signs this Agreement and any such Borrower requests that you cease making loans, you may comply with such a request. All Borrowers who have signed this Agreement must join in any request to reinstate the loans for such request to be effective. If all such persons subsequently request reinstatement of the loans, you must honor such a request unless a condition listed in paragraph 12.A above or 13.A below has occurred.

E. If an event or condition described in paragraph 12.A above occurs which is also an event or condition described in paragraph 13.A below, your rights and remedies described under paragraph 13.B below apply and supercede your rights described in this paragraph 12.

## 13. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.

A. You may take the actions listed in paragraph 13.B below if any of the following events or conditions occur:

(1)  I fail to meet the repayment terms of this Agreement, such as my failure to make any Minimum Payment Due to you on or before the Payment Due Date;

(2)  I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Deed of Trust;

(3)  I sell or transfer title to the Property without first obtaining your written permission (also, see paragraph 19.N below);

(4)  I fail to maintain insurance on the Property as required under this Agreement or the Deed of Trust;

(5)  I act or fail to act and as a result a lien senior to the lien of the Deed of Trust is filed against the Property;

(6)  I die and I am not survived by another person obligated as a Borrower under this Agreement;

(7)  All or part of the Property is taken through eminent domain, condemnation or similar government taking;

(8)  A prior lienholder on the Property begins foreclosure under its security document;

(9)  The Property is used for an illegal purpose which could subject the Property to seizure;

(10)  I fail to pay taxes on the Property; or

(11)  My action or inaction adversely affects the Real Property or your rights in the Property. Such action or inaction could include, for example, the following:

(a)  A judgment is filed against me;

(b)  I commit waste or otherwise destructively use or fail to maintain the Property;

(c)  I die and I am survived by another person obligated as a Borrower under this Agreement; or

(d)  I move out of the Property.

B. If an event described in paragraph 13.A above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

(1)  you may terminate any of my rights under my Account;

(2)  you may temporarily or permanently refuse to make any additional loans;

(3)  you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

(4)  you may foreclose the Deed of Trust;

(5)  you may reduce my Credit Limit; and

(6)  you may take any other action permitted by this Agreement, by law or in equity.

**14. SALE OF PREMISES.** I will not sell, transfer ownership of, mortgage, or otherwise dispose of my interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises, or transfer possession, whether by lease, rental, or otherwise, or discontinue to use the Premises as my primary and/or personal residence without your prior written consent.

**15. MY IMPORTANT OBLIGATIONS.** I agree that:

A. I will pay all of my existing and future debts to you under any existing or future agreement with you and I will pay all of my existing and future debts to my other creditors as they become due and will not allow a creditor to obtain a judgment against me.

B. I will not permit any person or entity to levy upon, attach, garnish or otherwise take any money, account or other property in your possession that belongs to me.

C. From time to time, if requested, I will supply you with current financial information about me.

D. I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Deed of Trust.

E. I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Property.

█████████████ allow use of the Property for any illegal purpose.

Page 7 of 10

G. I will not move out of the Property.

H. I will not permit a lien to be filed which takes priority over the Deed of Trust for future advances made under this Agreement.

I. I will not break any promise made in this Agreement or in the Deed of Trust such as:

    (1) my promise not to exceed my Credit Limit; and

    (2) my "Important Obligations" listed in the Deed of Trust.

**16. COSTS OF COLLECTION.** Subject to any limits of applicable law, I must pay for your reasonable and actual costs of collection, or foreclosure such as your court costs and reasonable attorney's or trustee's fees. Periodic finance charges will continue to accrue at the rates provided in this Agreement before and after I default and before and after you obtain a judgment against me.

**17. MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOANS.**

A. Termination by Me. I may terminate my right to obtain loans by sending you a written notice which will become effective upon receipt by you. If more than one person signs this Agreement as Borrower, my right to obtain loans may be terminated by written notice pursuant to this paragraph 17.A signed by any one or more of such persons. I may also suspend my right to obtain loans pursuant to paragraph 12.D above.

B. Termination by You. My right to future advances under my Account will terminate at the end of the Draw Period or any renewed Draw Period if not sooner upon your exercise of your termination or suspension rights under paragraphs 12.B or 13.B above or my exercise of my suspension or termination rights under paragraphs 12.D or 17.A above.

C. Effect of Termination. Upon termination or suspension of my Account, whether by you or by me, I must continue to pay the "Minimum Payment Due" on or before my "Payment Due Dates" until all amounts owed to you under this Agreement are paid in full. However, I may be required to repay all my obligations to you immediately if you exercise your rights under paragraph 13.B above. I must return unused Equity Credit Line Checks to you upon termination. I may be required to pay an Account Termination Fee pursuant to paragraph 8.D above.

**18. CHANGES TO AGREEMENT.**

A. You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

    (1) if the original Index is no longer available, you may change the Index and Margin;

    (2) you may make any change I agree to in writing;

    (3) you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loans; and

    (4) you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the date the Minimum Payment is due, the day of the month on which Index values are measured to determine my rate, your rounding rules and the balance computation method.

B. If required by applicable law, you will mail me notice of such a change before the effective date of the change. The change will be effective as to any existing unpaid balance and as to any future transactions under this Agreement.

**19. OTHER PROVISIONS.**

A. Third Parties. This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may add or release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend this Agreement without in any way affecting my or any non-borrower co-owner's obligations under this Agreement. My rights under this Agreement belong only to me, I cannot transfer or assign them to anyone else. You may transfer and assign your rights and obligations under this Agreement and the Deed of Trust at any time without my consent.

B. Additional Credit Reports and Appraisals. I authorize you to conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Property and the Deed of Trust as you may deem necessary from time to time. I will cooperate in having the Property reappraised.

C. Tax Deductibility. I know that I should consult a tax adviser regarding the deductibility of interest and charges.

D. Applicable Law. I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the Property is located.

E. Application of Payments. You may apply payments and proceeds of the Property in such order as you shall deem advisable or as otherwise required by applicable law.

F. Failure to Perform. If I violate or fail to perform any term or condition of this Agreement (or the Deed of Trust), you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid principal of my Account and finance charges will be figured at the rates described above. I agree to pay these costs and finance charges on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

G. Waiver of Jury Trial. I waive my right to a jury trial.

H. Complete Understanding of the Parties. There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

I. Waiver of Notice. I waive presentment, demand, protest, notice of default, nonpayment, partial payments and all other notices and formalities in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, except those notices that are required by federal Regulation Z.

J. Meaning of Words. All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.

K. Payment Marked "Payment in Full". I agree not to submit any checks to you in payment of my Account marked "Payment in Full" or similar wording unless the amount of the check is equal to the total amount then owing on my Account. If I do submit a check to you marked "Payment in Full" or similar wording for a sum less than the total amount then owing on my Account, you may accept it in partial payment of my Account but will not be bound by the "Payment in Full" or similar notation. Communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to PREFERRED FINANCIAL GROUP, INC. DBA PREFERRED MORTGAGE SERVICES
112 PARK PLACE, MILLBRAE, CALIFORNIA 94030

L. Enforcement. You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement and still exercise your rights at a later time.

M. Notices. Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular first class mail, addressed to me at my last address appearing on your records or at such other address as I may designate by written notice to you as provided in this paragraph 18.M and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by certified mail, return receipt requested, at PREFERRED FINANCIAL GROUP, INC. DBA PREFERRED MORTGAGE SERVICES
112 PARK PLACE, MILLBRAE, CALIFORNIA 94030
or to such other address as you may designate by written notice to me as provided in this paragraph 18.M.

N. Sale or Transfer of Property. I understand that one of the provisions of the Deed of Trust states: "Upon default by Trustor [the owner(s) of the Property] in the performance of any payment or other obligation secured hereby or in the performance of any agreement hereunder, or if, whether voluntarily or involuntarily, there is a sale or transfer of all or any part of (i) the Property or an interest therein, or (ii) a beneficial interest in Trustor and Trustor is not a natural person, or if Trustor ceases to use the Property as Trustor's primary residence, Beneficiary [you] may declare all sums secured hereby immediately due without notice or demand and no waiver of this right shall be effective unless in writing and signed by Beneficiary."

O. Riders/Addenda. The covenants and agreements of the rider/addendum checked below are incorporated into and supplement and amend the terms of this Agreement.

[x] Billing Rights Notice
[ ]

BY SIGNING BELOW, (1) I AGREE THAT I HAVE READ ALL PAGES OF THIS AGREEMENT INCLUDING ANY RIDERS/ADDENDA, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND CONDITIONS, INCLUDING ANY TERMS AND CONDITIONS LISTED IN ANY RIDERS/ADDENDA, AND (3) I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT AND ANY RIDERS/ADDENDA. I ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED, "IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT", THE HOME EQUITY BROCHURE ENTITLED, "WHEN YOUR HOME IS ON THE LINE" AND TWO COPIES OF THE HOME EQUITY LINE OF CREDIT NOTICE OF RIGHT TO CANCEL.

Borrower: BRUCE BLANKENHORN                                   Date: 2/23/06

Borrower:                                                     Date

Borrower:                                                     Date

Borrower:                                                     Date

Case 24-10004    Doc# 211    Filed 05/01/24    Entered 05/01/24 15:52:27    Page 26 of 45

# ADDENDUM TO HOME EQUITY CREDIT LINE
# AGREEMENT AND DISCLOSURE STATEMENT

Date: FEBRUARY 22, 2006                    Loan ▮▮▮▮▮▮
Borrower: BRUCE BLANKENHORN

Property Address: 455 CROSS STREET, NAPA, CALIFORNIA 94559

**7B. OTHER FINANCE CHARGES.**
**(I) Points FINANCE CHARGE.**
Origination Fee                                              0.00

Broker Fee FINANCE CHARGE.                                   0.00

Settlement Agent FINANCE CHARGE.                             0.00

Miscellaneous FINANCE CHARGE.
FUNDING FEE                                               250.00
MESSENGER FEE                                              50.00

**8.  OTHER CHARGES**
   **B.**
TITLE FEE                                                 638.30
NOTARY FEE                                                100.00
REC/FILING FEE                                             75.00

Total                         $                           813.30

By signing below, I hereby acknowledge receipt of this Addendum to the Home Equity Line Agreement and Disclosure Statement.

| | | | |
|---|---|---|---|
| Borrower BRUCE BLANKENHORN   Date 2/23/06 | | Borrower    Date |
| Borrower    Date | | Borrower    Date |
| Borrower    Date | | Borrower    Date |

T LINE AGREEMENT                    DocMagic *Forms* 800-649-1362
                Page 1                         www.docmagic.com

# ADDENDUM TO HOME EQUITY LINE OF CREDIT
# AGREEMENT AND PROMISSORY NOTE (THE "AGREEMENT")

This Addendum is affixed to and amends and supplements the Home Equity Line of Credit Agreement and Promissory Note (the "Agreement") entered into between you, BRUCE BLANKENHORN

, as Borrower(s),

and PREFERRED FINANCIAL GROUP, INC. DBA PREFERRED MORTGAGE SERVICES
on the 22nd day of FEBRUARY 2006 . Capitalized terms used in this Addendum have the same meanings as given to them in the Agreement.

The Section of the Agreement titled **REQUESTING A LOAN** is hereby amended by this Addendum to read as follows:

## REQUESTING A LOAN

You request a loan under this plan whenever you:

± Write a check for at least the minimum advance listed above using one of the special checks you have for that purpose.

± Authorize a payment to a third person or account for closing costs or certain other amounts on your behalf in accordance with your disbursement authorization provided to us at or before the time you sign this Agreement.

A subsequent holder of this Agreement may offer you additional methods of requesting a loan and will advise you of the terms and procedures for such additional methods.

Except for the modifications described above, all terms and conditions of the Agreement remain unchanged and in full force and effect, except that this Addendum shall be of no further force and effect if a subsequent holder permits you to request loans in the manners specified in the Agreement without reference to the terms of this Addendum.

_____ 2/23/06
Borrower BRUCE BLANKENHORN        Date        Borrower                          Date

_____                   _____
Borrower                          Date        Borrower                          Date

_____                   _____
Borrower                          Date        Borrower                          Date

_____                   _____
Witness                                        Witness

INE OF CREDIT AGREEMENT AND PROMISSORY NOTE            *DocMagic* eFarms 800-649-1362
                                                        www.docmagic.com

**RECORDING REQUESTED BY**
Napa Land Title Company

| Recorded | REC FEE | 53.00 |
|---|---|---|

Recorded
Official Records
County of
Napa
**JOHN TUTEUR**
Assessor Clerk Record

Recording Requested By:
PREFERRED FINANCIAL GROUP, INC. DBA
PREFERRED MORTGAGE SERVICES

EV
08:00AM 03-Mar-2006 | Page 1 of 14

After Recording Return To:
PREFERRED FINANCIAL GROUP,
INC. DBA PREFERRED MORTGAGE
SERVICES
112 PARK PLACE, MILLBRAE,
CALIFORNIA 94030

Prepared By:

DOC ID #

— [Space Above This Line For Recording Data] —

## DEED OF TRUST AND ASSIGNMENT OF RENTS

MIN

This deed of trust secures an obligation which calls for payment of interest at a variable interest rate.
THIS DEED OF TRUST is made this 22nd day of FEBRUARY, 2006 , between
BRUCE BLANKENHORN, A MARRIED MAN AS HIS SOLE AND SEPARATE
PROPERTY

herein called "Trustor," NAPA LAND TITLE, 1932 SIERRA AVENUE, NAPA,
CALIFORNIA 94558

herein called "Trustee," and "Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as
nominee for PREFERRED FINANCIAL GROUP, INC. DBA PREFERRED
MORTGAGE SERVICES, A CALIFORNIA CORPORATION ,
(hereinafter "you" or "Lender" and Lender's successors and assigns.) MERS is organized and existing
under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI
48501-2026, tel. (888) 679-MERS, herein called "Beneficiary."

Trustor irrevocably grants, transfers and assigns to Trustee, in trust and with power of sale, all of the real
property in the City or Town of NAPA , County of
NAPA , State of California, having the street address of
455 CROSS STREET, NAPA, CALIFORNIA 94559
and more specifically described as:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 005-102-009

...ust with MERS Page 1 of 10

FORMSEDGE - (800)635-4111

Initials 4/00

This Deed of Trust is subordinate to that
...e amount of
...recording

Parcel ID Number: 005-102-009                together with all improvements
now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however
to the rights and authorities given herein to Beneficiary to collect and apply such rents), royalties, mineral,
oil and gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter
attached to the property, all of which, including replacements and additions thereto, shall be deemed to be
and remain a part of the property covered by this deed of trust; and all of the foregoing, together with said
property (or the leasehold estate if this deed of trust is on a leasehold) are herein referred to as the
"Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by
Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for
Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests,
including, but not limited to, the right to foreclose and sell the Property; and to take any action required of
Lender including, but not limited to, releasing or canceling this Deed of Trust.

1.      THIS DEED OF TRUST SECURES:

        a.    All of the obligations of Trustor in favor of Beneficiary or order under the terms of a
        revolving credit agreement dated  FEBRUARY 22, 2006 , herein called Agreement. The
        Agreement provides, among other things, for the payment of all sums advanced by Beneficiary
        from time to time pursuant to the Agreement and for the payment of interest. The maximum
        principal obligation under the Agreement to be secured by this deed of trust at any one time to be
        ONE HUNDRED FORTY-SIX THOUSAND TWO HUNDRED FIFTY AND 00/100
        Dollars ($ 146,250.00     ) unless Beneficiary, with Trustor's written consent, hereafter
        increases this amount. Advances made by Beneficiary to protect the security of this deed of trust
        or to preserve the Property shall not be subject to the limitation of the preceding sentence.

        The security of this deed of trust shall not be affected by the extension, renewal or modification
        from time to time of the obligations, instruments or agreements described above.

        b.    Payment of any and all obligations and liabilities, whatsoever, whether primary, secondary,
        direct, indirect, fixed or contingent, whether now or hereafter due from Trustor (or any successor
        in interest to Trustor) whether created directly or acquired by assignment if the document
        evidencing such obligation or liability or any other writing signed by Trustor (or any successor in
        interest to Trustor) specifically provides that said obligation or liability is secured by this deed of
        trust.

        c.    Performance of each agreement of Trustor herein contained or contained in any other
        agreement, instrument or other writing to which Trustor is a party if the same is written in
        connection with any of the foregoing.

Initials ___

Order
Doc:                    Page 45 of 14                    Requested By: ncarroll, Printed: 5/20/2019 10:07 AM

d.    Payment of all sums to be expended by the Beneficiary or Trustee pursuant to the terms hereof.

2.    TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:

a.    To keep the Property in good condition and repair; not to remove or demolish any building or improvement thereon; to complete or cause to be completed any construction of buildings or other improvements thereon which are financed in whole or in part by the indebtedness secured hereby and to restore promptly and in good and workmanlike manner any building or other improvement which may be damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting the Property or requiring any alteration or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, weed, fertilize, fumigate, spray, prune and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general.

b.    To provide, maintain and deliver to Beneficiary fire and other insurance on the Property satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary, the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default hereunder or invalidate any act done pursuant to such notice.

c.    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this deed of trust.

d.    To pay at least ten days before delinquency all taxes and assessments affecting the Property, including, without limitation, assessment on appurtenant water stock, all encumbrances, charges and liens on the Property or any part thereof, and all costs, fees and expenses of this Trust.

e.    That should Trustor fail to make any payment or do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may:

(1)    Make or do the same in such manner and to such extent as either may deem necessary or appropriate to protect the security hereof, Beneficiary or Trustee being authorized to enter upon the Property for such purposes.

(2)    Appear in and defend any action or proceeding purporting to affect the security hereof or the rights or power of Beneficiary or Trustee.

(3)    Pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior and superior hereto.

(4)    In exercising any such powers, pay necessary expenses, employ counsel and pay his or her reasonable fees.

Initials: _____

Requested By: ncarroll, Printed: 5/20/2019 10:07 AM
Order
Doc:

f.  To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the maximum rate allowed by law in effect at the date hereof or at the option of Beneficiary, such sums may be added to the principal balance of any indebtedness secured hereby and shall bear the highest rate of interest as any such indebtedness.

g.  To pay for any statement provided for by the law in effect on the date hereof regarding the obligation secured hereby in the amount demanded by the Beneficiary but not to exceed the maximum allowed by law at the time the statement is demanded.

3.  IT IS FURTHER AGREED THAT:

a.  Any award of damages in connection with any condemnation for public use of or injury to the Property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

b.  By accepting payment of any sum secured hereby after its due date, or after the filing of notice of default and of election to sell, Beneficiary shall not waive its right to require prompt payment when due of all other sums so secured, or to declare default for failure so to pay, or to proceed with the sale under any such notice of default and of election to sell, for any unpaid balance of said indebtedness. If Beneficiary holds any additional security for any obligation secured hereby, it may enforce the sale thereof at its option, either before, contemporaneously with, or after the sale is made hereunder, and on any default of Trustor, Beneficiary may, at its option, offset against any indebtedness owing by it to Trustor, the whole or any part of the indebtedness secured hereby.

c.  Without affecting the liability of any person, including, without limitation, Trustor, for the payment of any indebtedness secured hereby, or the lien of this deed of trust on the remainder of the Property for the full amount of any indebtedness unpaid, Beneficiary and Trustee are respectively empowered as follows:

(1)  Beneficiary may from time to time and without notice (a) release any person liable for the payment of any of the indebtedness, (b) extend the time or otherwise alter the terms of payment of any of the indebtedness, (c) accept additional security therefor of any kind, including deeds of trust or mortgages, (d) alter, substitute or release any of the Property securing the indebtedness.

(2)  Trustee may, at any time, and from time to time, upon the written request of Beneficiary (a) consent to the making of any map or plat of the Property, (b) join in granting any easement or creating any restriction thereon, (c) join in any subordination or other agreement affecting this deed of trust or the lien or charge thereof or, (d) reconvey, without any warranty, all or any part of the Property.

d.  Upon (a) written request of Beneficiary or (b) performance of all obligations of the Trustor hereunder and under each and every note, guarantee, Agreement or other writing evidencing the indebtedness secured hereby, and upon surrender of this deed of trust to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recital in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described

Initials

Order:
Doc: C

Requested By: ncarroll, Printed: 5/20/2019 10:07 AM

as "the person or persons legally entitled thereto." Five years after issuance of such reconveyance, Trustee may destroy said note, guarantee, Agreement or other evidence of indebtedness and this deed of trust (unless directed in such request to retain them).

e.   Trustor hereby gives to and confers upon Beneficiary the right, power and authority during the continuance of these trusts to collect the rents, issues and profits of the Property and of any personal property located thereon, and hereby absolutely and unconditionally assigns all such rents, issues and profits to Beneficiary; provided, however, that Beneficiary hereby consents to the collection and retention of such rents, issues and profits as they accrue and become payable only if Trustor is not, at such time, in default with respect to payment of any indebtedness secured hereby or in the performance of any agreement hereunder. Upon any such default, Beneficiary may at any time, without notice, either in person, by agent, or by a receiver to be appointed by a court, without regard to the adequacy of any security for the indebtedness hereby secured and without limiting the generality of Section 2.e.(1), above, enter upon and take possession of the Property or any part thereof, and in its own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine; also perform such acts of repair, nurturing, cultivation, irrigation, weeding, fertilizing, fumigation, spraying, pruning or protection, as may be necessary or proper to conserve the value of the Property or any trees, planting or crops growing thereon; also lease the same or any part thereof for such rental, term, and upon such conditions as its judgment may dictate; also prepare for harvest, sever, remove, and sell any crops that may be growing upon the premises, and apply the net proceeds thereof to the indebtedness secured hereby. The entering upon and taking possession of the Property and performance or failure to perform any of the acts described in the preceding sentence, the collection of or failure to collect such rents, issues and profits, and the application thereof as aforesaid, shall not waive or cure any default or notice of default hereunder, or invalidate any act done pursuant to such notice and shall not constitute or otherwise result in any assumption by or liability of Beneficiary for maintenance, depreciation, misuse or risk of loss other than for damage or loss to the Property due to Beneficiary's gross negligence or intentional torts. Trustor also assigns to Trustee, as further security for the performance of the obligations secured hereby, all prepaid rents and all monies which may have been or may hereafter be deposited with said Trustor by any lessee of the premises herein described, to secure the payment of any rent, and upon default in the performance of any of the provisions hereof, Trustor agrees to deliver such rents and deposits to the Trustee.

f.   Upon default by Trustor in the performance of any payment or other obligation secured hereby or in the performance of any agreement hereunder, or if, whether voluntarily or involuntarily, there is a sale or transfer of all or any part of (i) the Property or an interest therein, or (ii) a beneficial interest in Trustor and Trustor is not a natural person, or if Trustor ceases to use the Property as Trustor's primary residence, Beneficiary may declare all sums secured hereby immediately due without notice or demand and no waiver of this right shall be effective unless in writing and signed by Beneficiary.

g.   Waiver of a right granted to Beneficiary hereunder as to one transaction or occurrence shall not be deemed to be a waiver of the right as to any subsequent transaction or occurrence. Beneficiary may rescind any notice before Trustee's sale by executing a notice of rescission and recording the same. The recordation of such notice shall constitute also a cancellation of any prior declaration of default and demand for sale, and of any acceleration of maturity of indebtedness

Page 5 of 10

Initials _____

Order:
Doc:
Page 5 of 14
Requested By: ncarroll, Printed: 5/20/2019 10:07 AM

affected by any prior declaration or notice of default. The exercise by Beneficiary of the right of rescission shall not constitute a waiver of any default then existing or subsequently occurring, nor impair the right of the Beneficiary to execute other declarations of default and demand for sale, or notices of default and of election to cause the Property to be sold, nor otherwise affect the note or deed of trust, or any of the rights, obligations or remedies of the Beneficiary or Trustee hereunder.

h.    At least three months or any lesser period required by law having elapsed between the recordation of the notice of default and the date of sale, Trustee, having first given notice of sale as then required by law, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as the Trustee may determine, at public auction to the highest bidder for cash, in lawful money of the United State of America, payable at the time of sale except as otherwise permitted by law. Trustee may postpone sale of all or any portion of the Property by public announcement at the time of sale, and from time to time thereafter may postpone the sale by public announcement, all as permitted by law. Trustee shall deliver to the purchaser its deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. The recital in any such deed of any matters or facts, stated either specifically or in general terms, or as conclusions of law or fact, shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary, may purchase at the sale. After deducting all costs, fees and expenses of Trustee and of this trust, including costs of evidence of title in connection with the sale, the Trustee shall apply the proceeds of this sale to the payment of all sums then secured hereby, in such order and manner as may be required by the Beneficiary; the remainder, if any, to be paid to the person or persons legally entitled thereto. If Beneficiary shall elect to bring suit to foreclose this deed of trust in the manner and subject to the provisions, rights and remedies relating to the foreclosure of a mortgage, Beneficiary shall be entitled to reasonable attorney's fees and litigation costs.

i.    Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this deed of trust is recorded and the name and address of the new Trustee.

j.    This deed of trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including, without limitation, pledgees, of the note, guarantee, Agreement, or other evidence of indebtedness secured hereby, whether or not named as Beneficiary herein. In this deed of trust, whenever the context so requires, the singular number includes the plural.

k.    Trustee accepts this Trust when this deed of trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

Page 6 of 10

Initials:

l.   If Trustor or any successor in interest to Trustor sells, transfers or encumbers any interest in the Property, whether voluntarily or involuntarily, or if a beneficial interest in Trustor is sold or transferred, voluntarily or involuntarily, and Trustor is not a natural person: (a) the transferor and the transferee shall each immediately give written notice of said transfer to the Beneficiary, at its address designated on the first page of this deed of trust; (b) if the deed of trust secures Trustor's obligation under an Agreement as defined herein, all credit extended by Beneficiary under the Agreement, whether before or after the property is transferred, shall be secured under this deed of trust as if no transfer had occurred except for credit extended by Beneficiary more than five days after it has received the written notices required by this paragraph.

m.   The pleading of any statute of limitations as a defense to any and all obligations secured by this deed of trust is hereby waived to the full extent permitted by law.

4.   WITH REGARD TO ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES, TRUSTOR AGREES:

a.   As used in this Paragraph 4:

(1)   "Environmental Law" means all federal, state and local law concerning the public health, safety or welfare, environment or a Hazardous Substance, including without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Sec. 9601 et seq., Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901 et seq., Toxic Substances Control Act, 15 U.S.C. Sec. 2601 et seq., Hazardous Materials Transportation Act, 49 U.S.C. Sec. 1801 et seq., Clean Water Act and Water Quality Act of 1987, 33 U.S.C. Sec. 1251 et seq., Safe Drinking Water Act, 41 U.S.C. Sec. 300f et seq., Clean Air Act, 42 U.S.C. Sec. 7901 et seq., Carpenter-Presley-Tanner Hazardous Account Act, Cal.Health & Safety Code Sec. 25300 et seq., Hazardous Waste Control Law, Cal.Health & Safety Code Sec. 25100 et seq., Porter-Cologne Water Quality Control Act, Cal.Water Code Sec. 1300 et seq., Hazardous Waste Disposal Land Use Law, Cal.Health & Safety Code Sec. 25220 et seq., Safe Drinking Water and Toxic Enforcement Act of 1986, Cal.Health & Safety Code Sec. 25249.5 et seq., Hazardous Substances Underground Storage Tank Law, Cal.Health & Safety Code Sec. 25280 et seq., Air Resources Law, Cal.Health & Safety Code Sec. 3900 et seq., Hazardous Materials Release Response Plans and Inventory, Cal.Health & Safety Code Sec. 25500 et seq., and Toxic Pits Cleanup Act of 1984, Cal.Health & Safety Code Sec. 25208 et seq.
(2)   "Hazardous Substance" means any substance which has characteristics of ignitability, corrosivity, toxicity, reactivity or radioactivity or other characteristics which render it dangerous or potentially dangerous to public health, safety or welfare or the environment, including without limitation, (i) petroleum or any fraction or other byproduct thereof, (ii) asbestos, (iii) lead, (iv) cyanide, (v) polychlorinated biphenyls, (vi) urea formaldehyde and (vii) anything defined as a "hazardous material," "toxic substance," "hazardous substance," "hazardous waste" or "waste" under any Environmental Law, including without limitation, "hazardous substance" as defined in Cal.Health & Safety Code Sec. 25316 and "waste" and "hazardous substance" as defined in Cal.Water Code Sec. 13050(d) and Sec. 13050(p)(l), respectively. The term is intended by Trustor and Beneficiary to be interpreted in its most comprehensive and cumulative sense.

b.   Trustor represents and warrants that except as disclosed to and acknowledged in writing by Beneficiary before the date of this deed of trust:

Case 24-10004    Doc# 7211    Filed 05/01/24    Entered 05/01/24 15:52    Page 36 of 45
Order:                                      Page 7 of 14                    Requested By: ncarroll, Printed: 5/20/2019 10:07 AM
Doc: C

(1) No Hazardous Substance has been located, used, manufactured, generated, treated, handled, stored, spilled, disposed of, discharged or released by any person on, under or about the Property.

(2) Trustor has no knowledge of or reason to believe that there is any pending or threatened investigation, assessment, claim, demand, action or proceeding of any kind relating to (i) any alleged or actual Hazardous Substance located under or about the Property or (ii) alleged or actual violation or noncompliance by Trustor or any tenant of Trustor with regard to any Environmental Law involving the Property.

(3) Neither Trustor nor any tenant of Trustor is required by any Environmental Law to obtain or maintain any permit, license, financial responsibility certificate or other approval as a condition to its business operations or in connection with its use, development or maintenance of the Property.

c. Trustor represents and warrants that Trustor and every tenant of Trustor have been, are and will remain in full compliance with any Environmental Law applicable to its business operations and its use, development or maintenance of the Property.

d. Trustor agrees to permit, or cause any tenant of Trustor to permit, Beneficiary to enter and inspect the Property at any reasonable time for purposes of determining, as Beneficiary deems necessary or desirable: (i) the existence, location and nature of any Hazardous Substance on, under or about the Property, (ii) the existence, location, nature, magnitude and spread of any Hazardous Substance that has been spilled, disposed of, discharged or released on, under or about the Property or (iii) whether or not Trustor and any tenant of Trustor are in compliance with applicable Environmental Law. If Trustor or its tenant fails to comply fully with the terms hereof, Beneficiary may obtain affirmative injunctive relief therefor.

e. Trustor agrees to indemnify and hold Beneficiary and its successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including, without limitation, all costs of litigation and attorneys' fees, which Beneficiary and its successors and assigns may directly or indirectly sustain or suffer as a consequence of any inaccuracy or breach of any representation, warranty or promise made in this deed of trust in connection with any Hazardous Substance or Environmental Law. Notwithstanding any of the language in the deed of trust to the contrary, this indemnity covers claims asserted after all the indebtedness secured by this deed of trust has been paid and discharged, whether or not the deed of trust has also been reconveyed to Trustor. The only exclusions hereto may relate to claims arising out of the affirmative acts of Beneficiary or of a third party after Trustor's interest in the Property has terminated.

f. The provisions of this Paragraph 4 shall not be affected by the acquisition by Beneficiary or its successors or assigns of any ownership or other interest in the Property beyond Beneficiary's security interest in the Property created under this deed of trust, whether or not such acquisition is pursuant to the foreclosure of this deed of trust or a merger of the interest of the Beneficiary or its successors and assigns in the Property.

Initials

5.    ADDITIONAL PROVISIONS:

   a.    The execution of this deed of trust by any person who has no present interest in the Property shall not be deemed to indicate that such an interest presently exists. Rather, execution of this deed of trust by such a person shall constitute such person's agreement that if such person hereafter acquires an interest in the Property, such interest shall be subject to Beneficiary's interest hereunder.

   b.    The execution of this deed of trust by any person who has a present interest in the Property shall not in itself be deemed to indicate that such person is liable to Beneficiary for any obligation described in Section 1., above. Any personal liability of such person to Beneficiary shall be determined on an independent basis (such as execution of the document or documents evidencing the obligation described in Section 1., above). Execution of this deed of trust by any such person shall nevertheless indicate that such person's interest in the Property shall be subject to Beneficiary's interest hereunder.

   The undersigned Trustors request that a copy of any notice of default, and of any notice of sale hereunder, be mailed to their respective addresses set forth opposite each signature.

**By signing below, Trustor agrees to all the terms and conditions of this deed of trust.**

Mailing Address For Notices

990 ALHAMBRA AVENUE,
EL GRANADA, CA 94018        BRUCE BLANKENHORN

Order
Doc:                                           Page 45 of 14        Requested By: ncarroll, Printed: 5/20/2019 10:07 AM

**State of California**
**County of** NAPA
On February 23, 2006, before me JASON ERIC Rafael, Notary Public, personally appeared
BRUCE BLANKENHORN

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.



JASON ERIC RAFAEL
Commission # 1554919
Notary Public - California
Napa County
My Comm. Expires Feb 26, 2009

Order:
Doc:
Requested By: ncarroll, Printed: 5/20/2019 10:07 AM

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made on this    22nd    day of FEBRUARY            ,
2006            , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the
"Borrower", whether there are one or more persons undersigned) to secure Borrower's Note to
PREFERRED FINANCIAL GROUP, INC. DBA PREFERRED MORTGAGE SERVICES, A CALIFORNIA (the "Lender")
of the same date and covering the property described in the Security Instrument (the "Property"), which is
located at

455 CROSS STREET, NAPA, CALIFORNIA 94559
[Property Address]

         In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender
further covenant and agree that Uniform Covenant 6 of the Security Instrument is deleted and is replaced by
the following:

**6. Occupancy and Use; Preservation, Maintenance and Protection of the Property; Borrower's Loan
Application; Leaseholds.** Borrower shall occupy, and shall only use, the property as Borrower's second
home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at all times,
and shall not subject the Property to any timesharing or other shared ownership arrangement or to any rental
pool or agreement that requires Borrower either to rent the Property or give a management firm or any other
person any control over the occupancy or use of the Property. Borrower shall not destroy, damage or impair
the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in
default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith
judgement could result in forfeiture of the Property or otherwise materially impair the lien created by this
Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as
provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's
good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material
impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also
be in default if Borrower, during the loan application process, gave materially false or inaccurate information
or statements to Lender (or failed to provide Lender with any material information) in connection with the
loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy
and use of the Property as a second home. If this Security Instrument is on a leasehold, Borrower shall
comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and
the fee title shall not merge unless Lender agrees to the merger in writing.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Second Home Rider.

_____ (Seal)          _____ (Seal)
BRUCE BLANKENHORN        -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower

OME RIDER                    Page 2 of 2          DocMagic *eForms* 800-649-1362
                                                          www.docmagic.com

Order: 
Doc: CA
Requested By: ncarroll, Printed: 5/20/2019 10:07 AM

# REQUEST FOR NOTICE OF DEFAULT

In accordance with Section 2924B, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded *Concurrently herewith*
in Book _____ page _____ records of NAPA
County, (or filed for record with recorder's serial number

NAPA County)
executed by  BRUCE BLANKENHORN, A MARRIED MAN AS HIS SOLE AND SEPARATE
PROPERTY
                                                                                                as trustor
(or mortgagor) in which  PREFERRED FINANCIAL GROUP, INC. DBA PREFERRED MORTGAGE
SERVICES, A CALIFORNIA CORPORATION                                    , is named
as beneficiary (or mortgagee) and  NAPA LAND TITLE

                                                                                                as trustee

to be mailed to:
        PREFERRED FINANCIAL GROUP, INC. DBA PREFERRED MORTGAGE SERVICES
                                112 PARK PLACE
                        MILLBRAE, CALIFORNIA 94030

**NOTICE:** A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

Signature  BRUCE BLANKENHORN        Date 2/23/06        Signature _____ Date _____

Signature _____ Date _____        Signature _____ Date _____

Signature _____ Date _____        Signature _____ Date _____

STATE OF CALIFORNIA        )
                           ) ss.
COUNTY OF NAPA             )

On February 23, 2006 before me, JASON ERIC Rafael, Notary Public
personally appeared  BRUCE BLANKENHORN

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

JASON ERIC RAFAEL
Commission # 1564919
Notary Public - California
Napa County
My Comm. Expires Feb 25, 2009

DEFAULT

DocMagic *eForms* 800-649-1362
www.docmagic.com

File No. ████████

Exhibit "A"

**Legal Description**

Commencing at a point on the Westerly line of Cross Street, distant thereon 212 feet Southerly from the point of intersection thereof with the Southern line of Oak Street, and running thence Southerly, along said line of Cross Street, 38 feet; thence at right angles, Westerly 150 feet; thence at right angles Northerly 38 feet; and thence at right angles Easterly 150 feet to the point of commencement.

Being the Southern 38 feet of Lot 7, in Block 2, as the same are shown upon that certain Map entitled, "Plan of the Town of Napa Abajo, in Napa County", recorded April 22, 1857 in Book D of Deeds at Page 110 in the office of the County Recorder of said Napa County.

APN: 005-102-009-000

Recording Requested By:
**TIA LABADIE**
After Recording Return To:
**COMPUTERSHARE TITLE SERVICES**
**c/o VISIONET SYSTEMS INC.**
**183 INDUSTRY DRIVE**
**PITTSBURGH, PA 15275**
Voice: 1-(412) 927-0226
Recording Requested By: Simpifile

**2018-0024778**

| Recorded | REC FEE | 18.00 |
| Official Records | | |
| County of | HOUSING TAX | 75.00 |
| Napa | | |
| JOHN TUTEUR | | |
| Assessor-Recorder-Co. | | |
| | LS | |
| 11:18AM 28-Dec-2018 | Page 1 of 2 | |

Tax Parcel ID: **005-102-009**

## Assignment of Deed Of Trust

ORDER #
MIN #                     MERS PHONE #: 1-888-679-6377

For value received, Mortgage Electronic Registration Systems, Inc., as nominee for PREFERRED FINANCIAL GROUP, INC. DBA PREFERRED MORTGAGE SERVICES, A CALIFORNIA CORPORATION, its successors and assigns, hereby grants, assigns, and transfers to: **Gulf Harbour Investments Corporation** all of its right, title and interest under that certain Deed of Trust dated 22nd day of February, 2006, executed by:

Trustor: BRUCE BLANKENHORN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

To Mortgage Electronic Registration Systems, Inc., as nominee for PREFERRED FINANCIAL GROUP, INC. DBA PREFERRED MORTGAGE SERVICES, A CALIFORNIA CORPORATION, its successors and assigns, whose address is P.O. Box 2026, Flint, MI 48501-2026 in the amount of: $146,250.00, recorded 03/03/2006 as Instrument No.: 2006-0007361 of the Official Records of Napa County, California

Property Address: 455 CROSS STREET, NAPA, CALIFORNIA 94559
Legal Description: SEE EXHIBIT "A"

Effective date: 13|37|3018

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**Mortgage Electronic Registration Systems, Inc., as nominee for PREFERRED FINANCIAL GROUP, INC. DBA PREFERRED MORTGAGE SERVICES, A CALIFORNIA CORPORATION, its successors and assigns**

By: _____
**SCOTT SLAGLE**
**ASSISTANT VICE PRESIDENT**

State of **PENNSYLVANIA**
County of **ALLEGHENY**

On 13|37|3018 before me, Tina M Darick the undersigned, a Notary Public in and for the county of ALLEGHENY in the State of Pennsylvania, personally appeared Scott Slagle, ASSISTANT VICE PRESIDENT personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that for his/her signature on the instrument the person, or the entity upon behalf of which he/she acted, executed the instrument.

**Tina M Darick**
My Commission Expires: **02/10/2021**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
TINA M DARICK
Notary Public
FINDLEY TWP, ALLEGHENY COUNTY
My Commission Expires Feb 10, 2021

# EXHIBIT "A"

COMMENCING AT A POINT ON THE WESTERLY LINE OF CROSS STREET, DISTANT THEREON 212 FEET SOUTHERLY FROM THE POINT OF INTERSECTION THEREOF WITH THE SOUTHERN LINE OF OAK STREET, AND RUNNING THENCE SOUTHERLY, ALONG SAID LINE OF CROSS STREET, 38 FEET; THENCE AT RIGHT ANGLES, WESTERLY 150 FEET; THENCE AT RIGHT ANGLES NORTHERLY 38 FEET; AND THENCE AT RIGHT ANGLES EASTERLY 150 FEET TO THE POINT OF COMMENCEMENT.

BEING THE SOUTHERN 38 FEET OF LOT 7, IN BLOCK 2, AS THE SAME ARE SHOWN UPON THAT CERTAIN MAP ENTITLED, "PLAN OF THE TOWN OF NAPA ABAJO, IN NAPA COUNTY", RECORDED APRIL 22, 1857 IN BOOK D OF DEEDS AT PAGE 110 IN THE OFFICE OF THE COUNTY RECORDER OF SAID NAPA COUNTY.

APN: 005-102-009-000

Order:
Doc:                                                                    Requested By: ncarroll, Printed: 5/20/2019 10:07 AM